**UNITED STATES of America**
v.
Charles F. WOLL.
Crim. No. 19252.

United States District Court
E. D. Pennsylvania.
Dec. 23, 1957.

Harold K. Wood, John A. Erickson, Philadelphia, for plaintiff.

Albert S. Oliensis, Philadelphia, Pa., for defendant.

LORD, District Judge.

On October 2, 1957, Charles F. Woll was found guilty by a jury of a violation of 18 U.S.C.A. § 371, which reads in part as follows:

> "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The defendant was employed by Philco Corporation as manager of its Government and Industrial Division. This division worked almost exclusively on government contracts. The price to the Government for this work was arrived at by several types of a cost redeterminable clause, a variation of the familiar cost plus clause. The heart of these clauses was a target price for which Philco would attempt to complete the work. If the target price was exceeded, there would be an increased cost to the Government. If the work was done for less than the target price, the Government would pay proportionately less. Charged to a specific contract would be such costs as materials and direct labor. Other items, such as general factory operations and supervisory time would be charged to a burden or overhead account which would then be allocated pro rata among contracts in progress in the division based on their dollar value.

The gist of the Government's theory is that the time of the employees sent out by the defendant to work on his and his sister's home on company time was thus ultimately charged to the various government contracts, with the result that the Government paid more, and hence there was a fraud against the United States.

The defendant has moved for judgment of acquittal or for new trial. Six points have been advanced in support of that motion. Three of these points appear directed to the motion for new trial, and they shall be considered first.

At the trial, the Government, through Mr. Charles F. Steinruck, Jr., Secretary of Philco Corporation, sought to establish the cost redeterminable features of the government contracts. Because of their classified nature, the contracts themselves were not offered in evidence. However, the cost redeterminable clauses of two of the contracts were made part of the record. In addition, Mr. Steinruck, who was familiar with them, testified that all the contracts had substantially similar clauses.

■ The first of the defendant's grounds for a new trial is that the admission of these contracts violated the Sixth Amendment to the Constitution in that there was a failure to confront him with his accusers. The defendant argues that his proved acts and conduct did not bring him into such relation to the contracts as to make them more than hearsay as to him. Salinger v. United States, 1926, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398. However, it is utterly inconceivable to this Court that a man in Mr. Woll's official position did not know, at least generally, what must be considered of fairly common knowledge, the use of cost redetermination clauses in government contracts. See McGunnigal v. United States, 1 Cir., 1945, 151 F.2d 162, certiorari denied 326 U.S. 776, 66 S.Ct. 267, 90 L.Ed. 469. That Mr. Woll knew his division was working more than extensively on government contracts is clear from his own testimony. Knowing that, he knew all he needed to know for the contracts to be used against him. Accordingly, the Court finds no merit in the defendant's contention that the contracts were hearsay as to him and that his right of confrontation under the Sixth Amendment was violated.

■ The second ground for a new trial raised by the defendant is that certain "business records" introduced by the Government were erroneously admitted. These records consisted of the time cards of the various employees who did work at the Woll or Bailey (Mr. Woll's sister) homes during company hours. In addition there was a list purporting to be a breakdown of the time reported on these time cards directly to government contracts, industrial business and burden by these employees during 1953 and 1954, the period covered by the indictment. Mr. Earl R. Genthe, comptroller of the defendant's division at Philco, testified that this breakdown was made under his (Genthe's) supervision from the time cards. The thrust of the objection seems to be that Mr. Woll had no personal supervision over these time cards. Again, however, the Court finds it incredible that the defendant could have been unaware that employees in his charge made out time cards and charged their time in the manner indicated by established company policy. Certainly this knowledge must be imputed to the defendant, and hence no error was committed in admitting these records. As for the breakdown list, since this was merely a compilation of the data shown on the time cards, it was admissible on the same ground as the cards themselves.

■ The defendant's third ground for the granting of a new trial is the failure of the Court to allow him to inspect the contracts against which the alleged fraudulent charges were made. Because the contracts were classified in nature, the Court refused the defendant's repeated requests to inspect them. Invoking the language of Jencks v. United States, 1956, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, the defendant argues that the Government cannot deprive the defendant of an opportunity to inspect the contracts and still maintain a prosecution for conspiracy to commit a fraud which admittedly depends on the existence of those very contracts for its validity. However valid this reasoning is in a fact situation similar to Jencks, the Court is not persuaded that this case presents a parallel, if only for the reason that the classified aspects of these contracts in no way affect the defendant's guilt or innocence. It is only the cost redeterminable clauses that are relevant to the theory of the prosecution, and as mentioned above two typical

forms of these clauses were made part of the record. It is difficult to see how the denial of the defendant's request to inspect all the contracts in their entirety in any way prejudiced his defense. Consequently, the Court concludes that this denial was not error. Since the three grounds raised by the defendant for a new trial are without merit, this part of his motion must be dismissed.

■■ The motion for judgment of acquittal remains to be considered. The first of the three reasons urged by the defendant to upset the verdict presents little difficulty. Two of the Government's witnesses, Masurat and Dick, mentioned in the indictment as co-conspirators with the defendant, testified that no idea of defrauding the Government ever crossed their minds. The defendant argues that a party is bound by the testimony of his own witness, and therefore by the Government's own evidence there could have been no intent to defraud the United States. The best answer to this position is simply that such is not the law in federal criminal cases.

"* * * In prosecutions of federal criminal cases, the government is not bound by the testimony of its witnesses, and the jury may believe part of what a witness says and disbelieve the remainder. * *" United States v. Gordon, 3 Cir., 1957, 242 F.2d 122, 126.

■ The defendant's second ground for judgment of acquittal has no more value than the first. He contends that the conspiracy to defraud, if any, was designed against Philco and not the United States, that Philco, not the United States, was charged with the time of Philco's employees working on the Woll and Bailey homes, and that Philco, not he, charged this time to the United States. This same argument was made to the Court of Appeals for the First Circuit in McGunnigal v. United States, 1945, 151 F.2d 162. In that case McGunnigal was employed as a "counter" by a shipbuilding company exclusively engaged in constructing warships. The "counter's" duty was to appraise the type of welding done by the welders and make a record thereof on daily tally sheets. These sheets were then used by the shipyard office to compute the welders' pay. McGunnigal and other "counters" agreed with certain welders to enter on the tally sheets amounts of welding in excess of that actually done. In return the welders would "kick back" a part of their wages every week to the "counters". The result was, of course, that the shipbuilding company billed the United States for this imaginary welding. It will be seen that McGunnigal is thus on all fours with the instant case as far as the question of "fraud-once-removed" is concerned. In dismissing McGunnigal's argument that no fraud had been committed against the United States, but only against the shipbuilding company, the court said (at page 166):

"They [McGunnigal and others] knew that the ships upon which they had worked were ships of war, they knew that those ships were being built for the United States * * *. Knowing this much, and it being well known generally that the 'cost plus' type of contract was widely used by the Government during the late war, we think it might logically be inferred that the appellants in fact knew, or at least had reason strongly to suspect, that the payrolls which they conspired to pad would ultimately be paid by the United States Government. * * *"

Hence, the Court has no doubt that the indirectness of the alleged fraud in no way vitiates the indictment. See also United States v. Furer, D.C.S.D.Cal. 1942, 47 F.Supp. 402.

■ The final ground advanced by the defendant appears to be the very heart of this case. The defendant contends that the evidence adduced by the Government in the broad area of mens rea or criminal intent was insufficient to support the jury's verdict. I agree.

■■ It goes without saying that a specific intent to commit the substantive

offense is an inseparable element of the crime of conspiring to defraud the United States. In other words one guilty of conspiracy to defraud the United States must have intended to commit an act or acts which in the context of all the surrounding circumstances constitute a fraud against the United States and necessarily give rise to the inference that the conspirator intended to commit that fraud. The authorities are legion that conspiracy, which as indicated above encompasses specific intent, is seldom capable of direct proof, but must be proved by circumstantial evidence. Wellman v. United States, 6 Cir., 1955, 227 F.2d 757; Van Huss v. United States, 10 Cir., 1952, 197 F.2d 120. I feel that there was ample circumstantial proof of a conspiracy or plan in this case. But that is not to say that the object or design of this plan was the criminal one of defrauding the United States.

There appears in the record ample evidence that a plan (conspiracy) existed among the defendant and the unindicted co-conspirators, Masurat and Dick, to have private work done by Philco employees on Philco time. But under the circumstances of this case, was this a deliberate fraud against the United States? It clearly was not. In fact it is difficult to perceive how it could have been a deliberate fraud even against Philco.

The defendant, Charles Woll, the only witness called by the defense, gave an uncontradicted account of the genesis of the "conspiracy". While the jury must have chosen to disbelieve this testimony, at least in part, such disbelief cannot substitute for contrary proof. United States v. Pechenik, 3 Cir., 1956, 236 F. 2d 844. According to Woll, his recently widowed sister, mother of two children, was desperately in need of living quarters. She had only $5,000 with which to buy a home. Woll discussed his problem with several friends among whom were Masurat and Dick. A lot was purchased and Dick undertook on his own time to help Woll (who was travelling extensively on Philco business) make arrangements with various subcontractors to get the home completed for Mrs. Bailey as soon as possible. By the end of 1952 the house was substantially completed. Certain jobs such as shingling, finishing the floors, and construction of a drainage ditch were undertaken by Woll, Dick, Masurat and other friends of Woll at Philco. The men would work on week-ends and evenings. Gradually they began to encroach somewhat on company time. Six of these men, called as Government witnesses testified substantially the same about the amount and kind of work and when it was done. Counsel stipulated that the testimony of six other men, should they be called, would be the same.

Masurat said that he left the plant a couple of nights at 4:00, but most of the roofing was done on his own time and over the week-end. Over a two-year period, 1953–1954, Masurat knew specifically of seven instances when work was done on company time involving approximately seven or eight people.

Dick testified that he contacted contractors "a lot on my own time" during 1952, that he helped put in pine panelling over a week-end beginning on a Friday afternoon. He estimated that he was at either Woll's or his sister's home maybe nine times during 1953–1954 on company time, but never a full day.

The gist of the testimony of the other four Philco employees was that they did work at either home five or six times over the two-year period, likewise never a full day, and that much of the work was done on their own time.

Masurat, it appears, was Woll's second in command, and it was he who at Woll's instance would send the men off to work on the two homes. He testified, and the other witnesses corroborated this, that supervisory personnel only were involved. This was done because he "didn't want to jeopardize [Philco work] by sending out [men working directly on division projects.]" According to three of the witnesses, their work at Philco

was finished and its progress was in no way impeded by their absence.

It is uncontroverted that all the men involved were salaried employees, that is, whether they worked or not they received their regular or base pay. It is also uncontroverted that their time was never charged directly to any specific contract. As supervisors their time, unlike that of the men under them working on a specific contract, was charged to a divisional burden or overhead account. Philco then allocated this charge pro rata to the various contracts in progress in the division. And this charge would have been so allocated even if *these men had been out sick for a month!* It will thus be seen that the United States, despite the cost redetermination clauses in its contracts with Philco, was not out of pocket as a result of Woll's conspiracy. And while the Government need not show actual pecuniary loss to successfully maintain a prosecution for fraud, Wallenstein v. United States, 3 Cir., 1928, 25 F.2d 708, certiorari denied 278 U.S. 608, 49 S.Ct. 13, 73 L.Ed. 534, it must show that some legitimate government activity has been hampered. United States v. Belisle, D. C.W.D.Wash.1952, 107 F.Supp. 283. It is obvious that the small amount of outside work done by these employees of Philco on company time did not hamper any activity of the United States. It is even more obvious that Woll and his helpers had no *intent* to hamper government activity by their conduct, and that such an intent cannot be inferred beyond a reasonable doubt from any or all of the circumstances of their conduct as established at the trial.

This decision is by no means an attempt to limit the broad scope of the conspiracy statute, or an expression of disagreement with the numerous cases decided under it. It holds only that this record is not sufficient as a matter of law for a jury to find beyond a reasonable doubt that a conspiracy to *defraud the United States* ever existed or that the defendant had any intention of defrauding the United States. The extreme reluctance this Court has to disturb a jury's verdict has been overcome only after a thorough search of the notes of testimony. I am convinced that to permit this verdict to stand would be utterly unconscionable.

Wherefore, it is ordered that the defendant's motion for new trial be denied and his motion for judgment of acquittal be granted.