**UNITED STATES of America**
v.
**Milton H. L. SCHWARTZ.**
**Cr. A. No. 20556.**

United States District Court
E. D. Pennsylvania.
Jan. 14, 1963.

Drew J. T. O'Keefe, U. S. Atty., by Joseph H. Reiter, Asst. U. S. Atty., for the United States.

Richter, Levy, Lord, Toll & Cavanaugh, by B. Nathaniel Richter, Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is a criminal prosecution for income tax evasion. The Government charges that the defendant willfully attempted to evade payment of his income tax by reporting sums as capital gains which the Government contends were ordinary income. These sums arose out of a series of transactions which will be discussed at length later in this opinion.

The jurisdiction of this Court was invoked under Title 26 U.S.C.A. § 7201, which provides in part as follows:

> "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title * * * shall * * * be guilty of a felony * * *."

The defendant was tried and convicted by a jury on Counts II and III of the Indictment, but failed to agree on Count I.

The defendant has filed motions for acquittal and a new trial which we will consider separately.

### MOTION FOR ACQUITTAL

The Indictment charges Milton H. L. Schwartz, hereinafter called Schwartz, with willfully and knowingly attempting

to defeat a large part of the income tax due and owing by him and his wife for 1954, 1955, and 1956. As to the sums allegedly owed by the defendant, the Indictment states that Schwartz and his wife returned as income for the year 1954, $3,686.94 and the amount of tax due and owing thereon was $809.38. The Government contends that the defendant knew their taxable income was the sum of $15,395.19 upon which income there was owing to the United States $3,738.56.[1] For 1955, the defendant returned $1,905.75 as his income with a tax liability of $381.15. The Government claims his income for 1955 was $23,143.72 with a tax liability of $6,474.61. In the year 1956, Schwartz reported his income as $2,402.33 with a tax liability of $597.97, whereas the Government alleges his income was $12,050.96, and there was $2,861.29 owing to the United States.

The series of transactions which brought about these charges occurred during the years 1952 through 1956. The defendant suffered a large carry forward capital loss of $174,000.00 during the year 1953. Because of this loss, he was allowed, as is any taxpayer, to take credit against it for five years of any capital gains which he received during the succeeding five years. The defendant in his returns for these years 1954, 1955, and 1956 reported as capital gain transactions various sums which the Government charges were income from services.

Schwartz is an attorney and a member of the Bar of Philadelphia. His own words best describe his practice as being devoted to financial matters, "and to help resurrect companies, individuals, matters that are complicated in some instances * * *" (NT 452). Schwartz was conversant in tax law and he represented clients with tax problems occasionally. His practice was international in scope, taking him to various foreign countries.

In considering these motions for acquittal and new trial, this Court is required to take the view of the evidence which is most favorable to the Government and to give the Government the benefit of all inferences which reasonably may be drawn in its favor. United States v. Frank, D.C., 151 F.Supp. 866, affd. 245 F.2d 284 (3 Cir. 1957), cert. denied 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed. 2d 35 (1957). The defendant advances the proposition that the Government is bound by the testimony of its own witnesses. This is not the law of this Circuit in criminal cases. United States v. Frank, supra; United States v. Woll, 157 F.Supp. 704 (E.D.Pa.1957); United States v. Cindrich, D.C., 140 F.Supp. 356, aff'd. 241 F.2d 54 (3 Cir. 1957). This Circuit follows the rule as stated in United States v. Gordon, 242 F.2d 122, 126 (3 Cir. 1957), cert. denied 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436 (1957).

" * * * In prosecutions of federal criminal cases, the government is not bound by the testimony of its witnesses, and the jury may believe part of what a witness says and disbelieve the remainder. * * *"

It seems that some of the witnesses called by the Government testified, as interpreted by the defendant, that these transactions involving Schwartz were partnership and ownership ventures rather than income from Schwartz's law practice. This Court is not of the same opinion, and there was enough testimony elicited from the Government's witnesses, singled out by the defendant, to find that these transactions were ordinary income matters. There were a number of disputed transactions which involved the defendant, and the first one concerned *General Public Warehouse*. In 1953, the defendant reported the sale of a capital asset

1. Subsequent recomputation at the trial altered Schwartz's tax liability as follows:

| Year | Tax Liability | Defendant's Return | Deficiency |
|------|------|------|------|
| 1954 | $3,194.36 | $737.38 | $2,456.98 |
| 1955 | $4,110.59 | $381.15 | $3,729.44 |
| 1956 | $2,992.29 | $597.97 | $2,394.32 |

which he terms "Gen'l. Public Ware". The return indicates that this alleged capital asset was purchased for $10,000.00 and sold for $44,000.00 in 1953.

The Government argued that the defendant never had a capital interest in General Public Warehouse and consequently never sold any such interest. The Government further contends that the payments made to the defendant by General Public Warehouse were payments made for legal services which the defendant performed, hence such were reportable as ordinary income.

It seems there were two agreements, one dated April of 1952, in which the defendant was to be a party to a joint venture. The agreement required contribution of a specific sum by each signer. The defendant never contributed. Subsequently, a new agreement was entered into, dated October 7, 1952. (NT 55–60). This new agreement provided that the April agreement is "null and void ab initio". (NT 57 at par. 1). Paragraph 3 of this agreement further stated that Schwartz rendered services (NT 58). Paragraph 4 of this agreement, and subsequent paragraphs, describe how the defendant was to be paid. Schwartz signed this agreement. The witness, Laupheimer, who is president of General Public Warehouse, stated that he employed the defendant as a lawyer. This was supported by a Power of Attorney, running in favor of the defendant. (Ex. G10).

Also, clearly showing that the defendant performed services and was being paid for services is the affidavit which Schwartz himself executed for submission to the Department of the Navy. (NT 39). This document indicates and details those services.

In direct response as to whether the defendant invested in General Public Warehouse, Laupheimer answered in the negative. (NT 93).

The next transaction was *The Fretz Building*. The Fretz Building, located at 10th and Diamond Streets in Philadelphia, was sold in December 1955. The buyer was a company controlled by Shorenstein. The seller was a company controlled by Garfinkle. The sale was executed by the defendant and a Mr. Wolf. For their commission, they jointly received $15,000.00. The defendant's share was one-half of this amount. This was established by the testimony of Garfinkle, the seller (NT 239); and the testimony of the buyer, Shorenstein (NT 252); and the testimony of the real estate agent, Mr. Wolf, with whom Schwartz split the fee. Wolf specifically identified this $15,000.00 as being paid for commissions (NT 313, 314). Wolf also testified that he and Schwartz were to contribute this payment toward the purchase price of the building pursuant to their own private agreement (NT 315). This testimony clearly shows that Schwartz was paid a commission for his part in this sale. What he did with it does not militate against this fact that it was paid as a commission, hence ordinary income.

The third transaction was called *Steiner*. It was charged that Schwartz received payments as ordinary income from the Paul Steiner Company. The Government introduced into evidence the testimony of Paul Steiner to establish the character of the money received by Schwartz. Steiner stated that Schwartz was his lawyer. (NT 111). For a portion of legal services the defendant asked for and was paid $10,000.00 (NT 115; also Ex. G19, G20 & G21). There was testimony that after the check was paid to Schwartz, it was cashed two or three days later. The money was taken to New York and used as an investment in a high rise apartment in Venezuela in which Steiner and Schwartz were to be partners.

What Schwartz did with this money is of no consequence, since it was paid to him for his services as a lawyer. This was ordinary income and was never reported as a capital transaction by the defendant.

The last major item was called *Masterpiece*. It concerned residual rights to the reissue showing of some old movies.

Litigation developed and a New York attorney, I. Arnold Ross, testified that he collected for Schwartz, through court action, certain fees which Schwartz had earned. Also, Ross paid Schwartz referral fees and other fees which were earned by Schwartz and collected by Ross. All of the income which the Government sought to prove through Ross, including the Masterpiece item, was stipulated to as ordinary income at the trial. (NT 298). Only two items, not having any relation to Masterpiece, were not stipulated to as ordinary income.

■ In order to sustain this conviction, the elements of willfulness and an attempt to evade and defeat the tax owing by the affirmative conduct of the defendant must be proved beyond a reasonable doubt. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The method of evasion used in this case was a substantial understatement of income, along with the mislabeling of ordinary income as capital gains. The defendant argues that no reported case exists wherein a defendant was found guilty of evasion because he reported an item as a capital gain which the Government ruled to be ordinary income. Schwartz further argues that this is merely a dispute over how to interpret the tax laws, and if it takes an expert to determine the capital gain nature of an item, no criminal intent is shown.

■■ The intent and essential function of the tax laws, to insure payment of every taxpayer's fair share of the fiscal burden, will not be frustrated by the ingenuity of the defendant. This defendant is a skilled attorney who has studied taxation. He is not a misinformed layman. The record shows that he engaged in financial deals of a highly sophisticated nature. The statute [2] is not restrictive or limited in application. Its very words illustrate this fact:

"Any person who willfully attempts in *any manner* to evade or de-

feat any tax * * *." 26 U.S.C.A. § 7201 (Emphasis supplied).

This most general language pervades the statute and encompasses any form of evasion, however innovating or original it may be.

"Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation." Spies v. United States, supra, at p. 499, 63 S.Ct. at 368.

The Indictment in this case alleged the filing of false returns to have been the manner of the attempt as is the usual case. Cave v. United States, 159 F.2d 464 (8 Cir. 1947). Furthermore, the willfulness of the defendant could be inferred from the consistent pattern of understating income. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). This alone would be sufficient, but the defendant resorted to evasive tactics during the investigation. In discussions with the agent, he repeatedly promised to show his books and records, but never did. Cindrich v. United States, 241 F.2d 54 (3 Cir. 1957).

■ The verdict of the jury was supported by substantial evidence and the crime of tax evasion was established beyond a reasonable doubt as to Counts II and III.

### MOTION FOR NEW TRIAL

The defendant raises the following matters which he contends warrant the granting of a new trial:

1. It was error to allow the Government expert Borenstein to give his testimony.

2. The Court erred in sustaining an objection to the interrogation of the witness Leonard Ettinger, Esq.

3. The Court erred in deleting major facts from Silberstein's deposition.

2. 26 U.S.C.A. § 7201.

4. Prejudicial remarks of the United States Attorney:

 (a) Concerning the immorality of Silberstein, and

 (b) Comment on the defendant's failure to show his books.

5. The Court erred in refusing to charge that a cash investment is not necessary in order to have a capital gain.

6. Newly discovered evidence of one Massey who was involved in these transactions with Schwartz.

While the Court considers some of these points as being of no merit we will consider them all.

▇▇▇▇ One of the Government's witnesses was a Mr. Borenstein, who computed the defendant's tax liability based on the evidence adduced at the trial. This is the usual and correct procedure in tax evasion cases. Cave v. United States, 159 F.2d 464, 468 (8 Cir. 1947). The defendant contends that this was an expression of opinion on the issue which the jury ultimately had to decide. The evidence which Borenstein summarized was only that which was introduced at the trial. It is difficult to see how he invaded the province of the jury. Friedberg v. United States, 348 U.S. 142, 75 S. Ct. 138, 99 L.Ed. 188 (1954). In fact, Borenstein was prevented by the Court from expressing an opinion as to whether he thought certain items were ordinary income (NT 382, 384). The admission of the testimony of an expert witness consisting of computations based on substantially the entire evidence in the record is not an invasion of the province of the jury. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1942). The defendant, himself, on cross-examination of the Government's agent Catrambone specifically asked him for and received his opinion that these items were ordinary income (NT 348).

▇▇▇▇ The Court refused to allow Leonard Ettinger to testify that he had advised the defendant these items were capital gain transactions. Leonard Ettinger is an attorney in Philadelphia. He was an associate of the defendant. At no time during this trial was it ever shown that an attorney-client relationship existed between Schwartz and Ettinger. Yet, Schwartz sought to cloak himself with the defense of reliance upon the advice of counsel. This was not the fact and the Court refused to allow this fiction to be foisted upon the jury. In spite of the Court's ruling, Schwartz, himself, testified that he asked Ettinger for his advice. (NT 512). Also Ettinger, himself, testified that he thought some of these items were capital gains and he advised Schwartz to speak to the Internal Revenue agent regarding same. (NT 392). Schwartz further testified that he asked the Internal Revenue agent's advice as to whether the Masterpiece item was a capital gain (NT 511). Even with the Court's rejection of Ettinger's direct statements concerning any advice to Schwartz, sufficient testimony was obtained regarding this fact. That testimony, however, cannot rise above the premises upon which it is based. Williams Company v. Serpas, 5 Cir., 261 F.2d 857 (1959).

The third contention of the defendant is that the Court erred in deleting what he calls major portions of agent Silberstein's deposition before it was read to the jury. It is important to point out that the defendant made no objection to the Court's action when this deposition was read to the jury by counsel. This deposition of Silberstein can best be described as a haranguing colloquy which generated more heat than light. It is replete with arguments, and frequently it deteriorated to the level of a personality clash among the parties present.

▇▇▇▇ The defendant objects to the Court's refusal to allow portions of the deposition to be read concerning Silberstein's illness and impending operation. It appears that the defendant wanted to impart to this deposition the character applicable to a dying declaration. This we could not and would not countenance

under the facts of this case. The fact of the deponent's illness and operation had no relevancy to the issues in this case. The deponent was ill, but there was no indication his case was hopeless and he had given up all hope of survival. This deposition was not a dying declaration and never could be designated as such under the rules of evidence. 5 Wigmore § 1432 (3d ed. 1940). This Court has the discretion to exclude parts of this deposition which bear no probative value in this case. The Judge is not a mere umpire at the game of trial. 1 Wigmore § 21 (3d ed. 1940). The admissibility of a given piece of evidence is for the Judge to determine. 9 Wigmore § 2550 (3d ed. 1940). Any part or all of a deposition so long as it is admissible under the rules of evidence may be used at a trial. Rule 26(d), Fed.R.Civ.P. The usual rules of evidence must restrict the use of depositions at trial. Barron & Holtzoff (Wright ed.), Vol. 2A § 654, Federal Practice and Procedure. Objectionable evidence in depositions ought to be ruled out at the trial, and some was ruled out in this case, including hearsay, leading questions and personal remarks. Kemp v. Government of Canal Zone, 167 F.2d 938 (5 Cir. 1948). The defendant objects because Silberstein was not allowed to say that in his opinion these items were capital gain transactions. The Court refused to allow this question and answer the same as it refused to allow the Government's witness to express a similar opinion. In spite of this ruling, Silberstein's deposition was allowed in as to his opinion of General Public Warehouse as being a capital gain (NT 404). Also, Agent Silberstein was allowed to state in his opinion that in all these years which he investigated he found no evidence of evasion by the defendant. (NT 412). The defendant points out the case of Lebeck v. Jarvis, 250 F.2d 285 (3 Cir. 1957), as holding contra to our action in ruling out certain questions and answers in the deposition. In Lebeck, the witness *was present* in Court. The Court then interrogated him and recalled the jury. Then the Court read the questions and answers to the jury. In so reading, the Court gave the jury the impression that only two persons were concerned in the testimony when in fact three persons were involved. This is entirely different from this case, since Silberstein *was never in Court* and nobody's identity was changed in the course of reading of this deposition. No confusion resulted, and quite to the contrary, the jury was spared the burden of listening to irrelevant quarrels and unrelated speeches of counsel contained in this deposition.

The defendant complains that the prejudicial remarks of the United States Attorney concerning the firing of Silberstein from the Internal Revenue Service for immorality warrants a new trial. The United States brought out this firing of Silberstein to show his bias as affecting his credibility since he was discharged after seventeen years' service. The United States Attorney in the heat of trial commented on this fact while eliciting testimony. However, he never overstepped the grounds of propriety as to constitute prejudicial error. Especially is this true, in view of the Court's charge to the jury that they could consider Silberstein to be as honest as any other man even though he was thus fired. The trial Court has wide discretion as to how and when bias may be proved and what collateral evidence is material. Mims v. United States, 254 F.2d 654 (9 Cir. 1958).

The comment on the defendant's failure to show his books was relevant to show the defendant's willfulness and evasive tactics during the investigation. Spies v. United States, supra; Cindrich v. United States, supra.

"Under the statutes the government has authority to examine books, papers and records (see Int. Rev.Code of 1954, § 7602, 26 U.S. C.A. § 7602; Int.Rev.Code of 1939, § 3614, 26 U.S.C.A. § 3614)." United States v. Frank, 245 F.2d 284, 286 (3 Cir. 1957).

This Court frequently protected the defendant in this regard throughout the

trial and particularly in its charge to the jury which states as follows:

"As to evidence—and I want to cover this point at this time—there was considerable mention throughout the trial and on argument relating to the production of the books by this defendant. Now let me tell you preliminarily—and my mind hasn't changed on this and no one has pointed out to me any reason why I should change it—basically no person has to submit his books, because under our Constitution you don't have to do things which may tend to incriminate you. Therefore, there was no legal obligation on this man to produce his books if he didn't want to. However, the fact that he did not produce his books may be used by you to consider whether or not he was attempting to conceal something, whether or not he cooperated, whether or not it was an act on his part, along with other things I will mention later, which may lead you to believe that what he did was wilful and intentional." (NT 600)

 The defendant never took an exception to the Court's charge. In fact, he characterized it as follows:

"Thank you Your Honor for an extremely fair charge. We don't have a single exception to take." (NT 616, 617)

Now, the defendant argues that error resulted in our not charging the jury that a cash investment is not necessary in order to have a capital gain.[3] Since this contention emphasizes a certain phase of the evidence it is not demandable as a matter of right. United States v. Pannell, 178 F.2d 98 (3 Cir. 1949). Also, the defendant never requested the Court to charge to this effect. In the absence of a request for charge, a new trial is justified only if the failure to instruct

constitutes a basic and highly prejudicial error. United States v. Gordon, supra. The Court specifically told the jury that the defendant as a lawyer could invest in a business deal the same as anyone else (NT 630). All of the deals enumerated in this record required a cash investment for participation by the parties. None of the agreements or testimony concerning these transactions show that Schwartz was asked to contribute his services in lieu of cash. The Court charged the jury that the defendant claimed he entered these deals as investments and left it up to the jury to determine the truth of this fact.

 The so-called newly discovered evidence contained in the Massey affidavit that he was kept from the trial by the United States Attorney is the weakest objection raised by the defendant. Massey was amenable to process by the defendant and he did not call him. Also, the Government can select its own witnesses and is not compelled to call every witness who has a connection with this case. There is nothing in Massey's affidavit which shows that he was actively prevented from appearing at the trial by the United States Attorney. Massey's statement in this affidavit that Schwartz was a partner in General Warehouse is contradicted by his earlier letter to this Court, *filed* on September 25, 1962. In paragraph one of this letter Massey states in part as follows:

" * * * In my deposition to the Internal Revenue Service Agent Catrambone, I had stated that Milton H. L. Schwartz was intended to be a partner along with Alfred J. Laupheimer and myself in General Public Warehouse *and had become unacceptable as a partner to Mr. Laupheimer because of lack of further capital investment.*" (Emphasis supplied)

---

3. The defendant addresses the Court to Zampetti v. Cavanaugh, 406 Pa. 259, 176 A.2d 906 (1961), as authority for this proposition. This case is distinguishable on its facts. Zampetti was a director and

secretary of the corporation. He also contributed equipment and his inventive services as his investment in the corporation. This was done pursuant to the agreement among the parties.

The defendant was fortunate in having the services of a skillful attorney, who is one of the foremost members of the Bar. This fact is borne out by the jury's disagreement on the first Count of the Indictment. Schwartz's constitutional rights were vigorously protected, and every unreasonable assault was repulsed by his counsel's advocacy.

There is sufficient evidence in this record to justify the jury's verdict. The defendant's objections have been considered at length and we find no error requiring a new trial.

ORDER

AND NOW, this 14th day of January, 1963, IT IS ORDERED that the motion of the defendant, Milton H. L. Schwartz, for judgment of acquittal, or in the alternative for a new trial, is denied.