**UNITED STATES of America**
v.
**Milton H. L. SCHWARTZ, Appellant.**
**No. 14369.**

United States Court of Appeals
Third Circuit.

Argued Sept. 27, 1963.

Decided Nov. 27, 1963.

Rehearing Denied Jan. 16, 1964.

Kenneth Syken, Philadelphia, Pa., (B. Nathaniel Richter, Richter, Levy, Lord,

Toll & Cavanaugh, Philadelphia, Pa., on the brief) for appellant.

Joseph H. Reiter, (Asst. U. S. Atty.), Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, KALODNER and GANEY, Circuit Judges.

GANEY, Circuit Judge.

The defendant-appellant was indicted on November 8, 1960, for income tax evasion for the years 1954, 1955 and 1956. The indictment is in three counts, each covering one of the three years. The substance of the counts is that the appellant had wilfully attempted to defeat the payment of a large part of the income tax due and owing by him and his wife by reporting certain income received by him during the years involved as capital gains instead of as ordinary income, in violation of § 7201 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7201. The jury disagreed as to the first count, but found him guilty on the other two. His post-trial motions for judgments of acquittal and for a new trial were denied,[1] and sentence was imposed by the trial court.

■ His first claim on appeal is that the trial court erred in denying his motion for judgment of acquittal, since there was insufficient evidence to submit to the jury that defendant had wilfully evaded the payment of income taxes. We think there was sufficient evidence of a consistent pattern of his understating income from which the jury was reasonably justified in finding him guilty under the counts of the indictment. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 731 (1954); United States v. Moran, 236 F.2d 361 (C.A.2, 1956). The trial court did not err in denying his motion for judgment of acquittal.

In support of his contention that the trial court abused its discretion in deny-ing his motion for a new trial, defendant vigorously protests the remarks made by the prosecuting attorney regarding the reason for the discharge of one Saul E. Silberstein from the Internal Revenue Service. He maintains that these remarks were so inflammatory and prejudicial as to require the granting of a new trial.

Silberstein had been an employee of the Internal Revenue Service from 1942 to 1959. His deposition had been taken to show that defendant's treating of certain items of income as capital gain in his income tax returns was not done for the purpose of evading a larger payment of income taxes. At the time of trial, because of his illness, he was not available as a witness. The trial court permitted parts of his deposition to be read to the jury. The direct examination of the deposition reveals that Silberstein had examined appellant's returns for the years 1953 to 1956 and found no evidence of evasion. A portion of the deposition on cross-examination, which was also read to the jury, is as follows:

"Q. And what were the circumstances of your leaving the Treasury Department?

"A. I was removed from the service.

"Q. And for what reason?

"A. Immoral conduct.

"Q. And what did that immoral conduct consist of?

"A. Falling in love with a woman.

"Q. Were you married at the time?

"A. I was; and allow me to say, and while you are bringing this up, there were several charges of immoral conduct at the same time. One individual received a raise and one got a very high promotion, and I won't go into that.

"Q. And what did the immoral conduct charge consist of?

---

1. The opinion of the District Court is reported at 213 F.Supp. 306, 307 (E.D.Pa.1963).

"A. Well, it is in the record. You can look it up. I do not wish to discuss it."

In rebuttal, the prosecution called an agent of the Internal Revenue Service who had worked with Silberstein in the investigation of appellant's income tax returns. A portion of the colloquy is as follows:

"Q. Agent Catrambone, do you know why Silberstein was discharged from the Internal Revenue Service?

"A. Yes. I do, for immoral purposes.

"Mr. Reiter [prosecuting attorney]: I have no further questions.

"The Court: Mr. Reiter, that was wholly unnecessary.

"Mr. Richter [defense counsel]: Now I must again ask for the withdrawal of a juror.

"The Court: Wholly unnecessary. That is exactly what the witness himself said. How do you impeach somebody by saying twice what he said once? Now go ahead.

"Mr. Reiter: I have no further questions.

"The Court: The motion is denied."

In his summation to the jury, the attorney for the prosecution made the following remarks:

"Now let's take a look at the defense. We do have a defense here, we have a defense in every case. And the defense here consists of the defendant saying that "Somebody looked at my books, a Revenue agent, and he said it was all right."

"All right, now let's take a look at this Revenue Agent. Let me bring this out to you. This Revenue Agent Sol Silberstein testified that he had worked for Internal Revenue for a long time, I think seventeen years, and then he compromised himself. He was caught in an act of immorality, adultery. Now you know whenever you get these sinners they have some way of, you know, saying that it isn't so bad. What he said was, "Oh, my only error was falling in love." Well, no matter how he tried to make it sound nice it boils down to the same thing, immoral conduct, compromise, and he got kicked out.

"Now, you must understand that the Internal Revenue Service you know really has no choice. I mean, these people are in sensitive positions and when they start compromising themselves by going into hotel rooms with women when they are married and have kids, I mean, that makes them very susceptible to any kind of nonsense, and that is the reason they had to get rid of him. Now, he felt that this was a blast. I mean, he didn't bring this on himself, you know. This wasn't his fault that he was thrown out. I mean, he just took another woman, you know. This wasn't his doing, not at all. He is bitter. He says, 'Other people do it and they get promoted and it is all right.' That is right there in his deposition.

"With this kind of bitterness, with this kind of antagonism, with seventeen years already in the service, what is this guy waiting for? He is waiting for the opportunity to get back at Internal Revenue Service. He wants to strike that one blow. He would love to grab him by the throat and shake him, and he thinks he had his chance here."

At this point counsel for the appellant rose in protest. In answer the trial court advised him that he could argue all of that to the jury when his opportunity came, since it was a matter of argument. The court did, however, request the attorney for the prosecution to stick to the facts because only the facts in the deposition were before the jury. Then after the prosecuting attorney returned to his summation, counsel for appellant interrupted, saying, "Pardon me, Your Hon-

or. To protect the record, now there is absolutely no evidence in any deposition of anybody being found in any hotel rooms or anything like that." The court granted him an exception.

During his charge to the jury, the trial court made the following remarks:

"Now, early in my charge I am going to relate to this Agent Silberstein. Mr. Silberstein was attacked vigorously by the Government. The issue before you as to Mr. Silberstein is not why he left the service or what he did. I do think that inadvertently the United States Attorney made reference to hotels, or something of that kind. None of that was in the testimony. I don't think it is of any importance but I point it out to you for what it is worth. I am sure that at the time he thought it was in the deposition. The fact is, and I will read the testimony to you, the question was asked by the Government:"

Then he re-read to the jury that portion of Silberstein's deposition on cross-examination set forth above. Then he went on to say:

"Now, that was all that was said at that time, so that is what you will consider.

"Now, why does the Government bring that up? We are back again to the question of credibility. The Government has a right to argue to you, as they have, that you may not want to put credence in his testimony because of this fact. That is a matter for you to decide. You can decide in your own minds that a person who was discharged from the service for immoral conduct might be just as honest as anybody in this courtroom, or you may not. That is a matter solely for you to decide. It only goes to the weight of his credibility, and you put whatever emphasis you want on it."

■ The trial court has wide discretion in its control of the extent of summation by counsel. But such discretion is not unlimited. Though counsel may suggest such legitimate inferences as could be drawn from the evidence produced at the trial, he may not refer to prejudicial facts having no basis in the record, or draw upon conjecture. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Robinson v. United States, 32 F.2d 505 (C.A. 8, 1929); Latham v. United States, 226 F. 420 (C.A.5, 1915); Wagner v. Pennsylvania R. Co., 282 F.2d 392, 396 (C.A. 3, 1960). When counsel does make such references to the jury, that body should be admonished to disregard them. However, as the Court noted in the Robinson case, supra, 32 F.2d at p. 508: "There are times when no admonition or instructions of the court can remove from the jury's mind the effect of improper conduct and remarks of counsel, and we think this is true in this case.  *  *  * " This was not a case, as in United States v. Stirone, 262 F.2d 571, 577 (C.A.3, 1958), where "Lawyers for both sides 'clash'd on their sounding shields the din of war.' Each side made charges against the witnesses for the other side.  *  * " On the contrary, as counsel for the prosecution admitted at argument on appeal, the trial was one of "measured caution". By contrast this made the objectionable remarks all the more glaring.

Yet even if it could be said that the possible adverse effect of the improper remarks could have been neutralized by the trial judge, we cannot say that his admonition to the jury cut deep enough to remove their malignant effect. The court's instructions convey the impression that it did not think the remarks were of any importance but that the jurors could, if they so chose. At the very least, they could have been told to disregard them and that such remarks had no bearing one way or the other in their determination of the guilt or the innocence of the defendant.

■ Since the case must go back for a new trial, we think it appropriate that we answer another contention of the ap-

pellant. He maintains that the trial court erred in sustaining the prosecution's objections to an attorney, with whom appellant shared a law office during the critical period in question, testifying that he had told the defendant that one or more of the disputed transactions in this case were, in his judgment, properly treated as capital gains. The trial court sustained the objections on the ground that the jury might give too much weight to this testimony despite the fact that appellant had not shown that the attorney was familiar with all the necessary facts regarding the transaction or transactions. Under such circumstances the trial court did not abuse its discretion. United States v. McCormick, 67 F.2d 867 (C.A.2, 1933), cert. denied, 291 U.S. 662, 54 S.Ct. 438, 78 L.Ed. 1054.

The judgment of conviction and sentence on counts two and three will be reversed and the case will be remanded with directions to grant defendant a new trial.

MARIS, Circuit Judge (dissenting).

I am in complete accord with the court in its view that the jury was justified in finding the defendant guilty on the second and third counts of the indictment and that the court did not err in sustaining the Government's objection to the testimony of the defendant's witness Ettinger. But I cannot agree that the defendant is entitled to a new trial because of the remarks made by counsel for the Government in his summation with respect to the defendant's witness Silberstein. I agree that those remarks were ill-advised and in bad taste but I do not believe that they could have operated to discredit the witness in the minds of the jury, and thus to prejudice the defense, to any greater extent than Silberstein's testimony, to which the defendant had made no objection, had already done.

Silberstein testified, on cross-examination, that he had been removed from the service of the Treasury Department for immoral conduct involving falling in love with a woman, he being at the time a married man. He stated that he did not wish to discuss the nature of the charge of immoral conduct. I am satisfied that any juror of ordinary intelligence and experience with the facts of life would inevitably infer from this testimony that Silberstein had been discharged by the Treasury Department for sexual misconduct with a woman other than his wife. Certainly anything less than adultery would hardly be described in ordinary parlance as "immoral" conduct with a woman other than one's wife. I cannot believe that a juror would have thought that such drastic action as dismissal would have been taken by the Government if Silberstein had merely taken a woman other than his wife to dinner or the theatre or sent her a valentine or a Christmas gift. And it is equally certain, to my mind, that a juror would be likely to infer that the witness's admitted immoral conduct took place in a secluded spot. Whether this was a hotel room or some other place would not seem to be a point of any consequence in this case.

I repeat that I regard the remarks of Government counsel with respect to Silberstein's conduct as unfortunate and ill-advised. But I am sure that the ideas which they suggested as to the nature of his conduct were already in the minds of the jurors and others in the courtroom as the result of the reading of his testimony. Moreover it must be remembered that Silberstein was not the defendant on trial and these facts were relevant, if at all, only on the question of his credibility as a witness. This the trial judge adequately pointed out in his charge which I think put the whole matter in its proper perspective.

In my judgment the defendant was fairly tried and properly convicted. I would affirm the judgment of the district court.