**UNITED STATES of America**

v.

**Jordan B. COLLETTA, D.O.**

**Crim. A. No. 84–307.**

United States District Court,
E.D. Pennsylvania.

Feb. 21, 1985.

---

Linda D. Hoffa, Asst. U.S. Atty., Philadelphia, Pa., for the government.

Samuel C. Stretton, West Chester, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Before me is a motion by defendant for release upon bail pending appeal. Defendant argues that, under the terms of the Bail Reform Act of 1984, as construed by the Court of Appeals for the Third Circuit in *United States v. Miller*, 753 F.2d 19 (1985), he is entitled to bail pending appeal because his appeal raises substantial issues which, if resolved in his favor, would be likely to result in reversal. For the reasons that follow, I agree.

### I.

On July 18, 1984, defendant was indicted for three counts of mail fraud. The indictment charged that defendant, a doctor of osteopathy, purposely overstated the number of office visits of certain patients in order to (1) enable the patients to reach the $750 threshold required by Pennsylvania law in order to collect damages for pain and suffering, and (2) collect more money from whatever insurance company was liable for the patients' medical expenses. Af-

ter a two-day jury trial, defendant was convicted on all three counts on September 13, 1984. Post-trial motions were filed, and oral argument was heard on December 21, 1984. These motions, which sought, in the alternative, judgment of acquittal or a new trial, were denied following oral argument. Defendant was then sentenced to (1) three years of probation, the first six months of which are to be served in a Community Treatment Facility, and (2) restitution to the defrauded insurance companies. At sentencing, defendant indicated that he would appeal his conviction, and requested the court to set bail pending the appeal. I denied this request, for the reason that success on appeal was not in my judgment probable, and was therefore foreclosed under the Bail Reform Act of 1984.[1] Defendant proceeded to file his appeal, and again moved, pursuant to Federal Rule of Appellate Procedure 9(b), for bail pending appeal. In an Order entered on January 21, 1985, the Court of Appeals for the Third Circuit denied defendant's motion without prejudice to an application to this court to reconsider, in light of the recent *Miller* decision, its prior denial of bail. Defendant filed such an application on January 28, 1985. The government filed its response on February 13, 1985.

### II.

The recently enacted Bail Reform Act of 1984 governs defendant's application. *See United States v. Miller, supra,* at 21 (1984 Act applies to cases tried before Act took effect). That Act provides in pertinent part:

> (b) RELEASE OR DETENTION PENDING APPEAL BY THE DEFENDANT. —The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

---

1. My then-reading of the Bail Reform Act was essentially the same as that of the district judge whose denial of bail pending appeal led to the *Miller* decision. *See United States v. Miller, supra,* at 21.

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c); and

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(b) or (c).

18 U.S.C. § 3143(b). There is no evidence that defendant, who is suffering from serious medical problems, would either flee or "pose a danger to the safety of any person or the community" if released pending his appeal. Nor does the government contest defendant's motion on this ground. Rather, the government argues that defendant's appeal does not raise "a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(2).

In *United States v. Miller, supra,* the Third Circuit discussed the requirement created by subsection (b)(2). *Miller* arose on a motion pursuant to Federal Rule of Appellate Procedure 9 for bail pending appeal. The district court had denied a similar motion after finding that the defendants' appeal was not likely to result in reversal or a new trial order. *Miller, supra,* at 22. The Court of Appeals rejected the district judge's reading of the statute, which would have required that bail be granted only if the district court found that, more probably than not, it had committed a reversible error. *Id.* Instead, the Court of Appeals found that subsection (b)(2) calls for two distinct findings: (1) whether the question raised on appeal is "substantial" within the meaning of the Act, and (2) if so, whether a ruling in defendant's favor on that question would require reversal or a new trial. *Id.* at 23.

Thus, the *Miller* court found, the Act does not require district judges "to be put in the position of 'bookmakers' who trade on the probability of ultimate outcome." *Id.* at 23. Rather, it requires, as a prerequisite to an order establishing bail pending appeal, a finding that a criminal defendant's ground for appeal is both substantial and likely to be outcome-determinative. *Id.* at 23.

█ As the Court of Appeals discussed in some detail, Congress intended these two requirements to, in effect, create a presumption against the granting of bail pending appeal. *See* S.Rep. No. 225, 98th Cong., 1st Sess. at 26 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 1, 29 (Supp. 9A); *Miller, supra,* at 22–23. To that end, Congress changed the requirement in former 18 U.S.C. § 3148—that the question on appeal not be "frivolous"—to the "substantial question of law or fact" standard embodied in the newly enacted 18 U.S.C. § 3143(b)(2). *See Miller, supra,* at 22–23. That standard is designedly stringent, requiring the district court to find "that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* at 23. The second prong of subsection (b)(2)—that the alleged error be potentially outcome-determinative—complements the substantial question requirement: both are designed to limit bail to those relatively few cases in which the court perceives that the applicant has a reasonable likelihood of prevailing on appeal.

I turn now to the question whether defendant's claims on appeal satisfy the standard which Congress enacted in subsection (b)(2), as defined by the Court of Appeals in the *Miller* case.

### III.

Defendant's brief on appeal[2] raises four grounds for reversal. First, defendant ar-

---

**2.** In the ordinary case, the decision whether to grant bail pending appeal will be made shortly after sentencing, well before the criminal defendant has prepared the brief which he plans to use on appeal. Such is not the case here because of the timing of the *Miller* decision, which was filed some three weeks after defendant was sentenced. By the time defendant filed

gues that the evidence at trial was insufficient to prove the three mailings which provided the jurisdictional bases for the indictment. Second, defendant contends that the evidence was insufficient to show that reports purportedly prepared or signed by defendant were in fact so prepared or signed. Third, defendant maintains that certain medical records seized during a search of his office should have been suppressed on Fifth Amendment grounds and on the ground that their seizure violated a physician-patient privilege. Finally, defendant argues that counsel for the government made inflammatory statements to the jury which denied defendant his right to a fair trial.

■ Of defendant's four arguments on appeal, two involve no basic dispute as to the applicable legal standard. The contentions that the evidence was insufficient to prove the requisite mailings and defendant's connection with certain reports raise factual questions. As to these issues, the first two prongs of the *Miller* definition of "substantial"—that the question be "novel" or "not ... decided by controlling precedent"—do not sensibly apply. Rather, factual determinations like those presented here require the court to decide whether the evidence presents a close case—in other words, whether the question is one "which is fairly doubtful." *Id.*

■ In my judgment, neither of defendant's sufficiency-of-the-evidence arguments raises a "doubtful" question.

The mailings alleged in the indictment are three letters from counsel for certain of defendant's patients transmitting medical bills to the insurance companies liable for those bills. As to each of these letters, the government elicited testimony from personnel at the recipient insurance company regarding the ordinary procedure for processing incoming mail and the manner in which the particular letter was processed. Thus, Edward Maule, a claims superintendent for State Farm, testified that

the letter from the Rosenfield law firm which forms the basis for count one of the indictment was processed in State Farm's mail and filing department, as shown by the date stamp on the letter. Tr. at 23–24 (Sept. 12, 1984). Maule also testified that such correspondence was ordinarily received by mail. *Id.* When counsel for defendant asked whether the letter could have been hand-delivered or sent by courier, Maule stated that it was possible but unlikely. *Id.* at 33–35. On re-direct, Maule testified that in twenty-nine years of employment at State Farm, he had never heard of a letter being hand-delivered from an attorney to the company's offices. *Id.* at 42. The testimony with regard to the mailing alleged in count two is essentially the same, *id.* at 48–49, with one exception: Debra Stout, an insurance adjuster for Pennsylvania National Mutual Casualty Insurance Company, testified that correspondence which entered that company's office by courier service would probably have the envelope attached to the correspondence in the file. *Id.* at 59–60. The letter in question did not have an envelope attached. *Id.* at 55. Finally, with regard to the mailing alleged in count three, a notation appears at the bottom of the letter indicating that the letter was sent by certified mail. *See id.* at 73. As to each of the three letters, I find the evidence of mailing quite substantial.

■ Defendant's second sufficiency-of-the-evidence argument goes to the question whether defendant prepared or had knowledge of the medical bills enclosed in the three mailings. Each of the bills is typed on stationery bearing defendant's name and address, and each bears a signature which purports to be defendant's. Moreover, copies of three of the four bills in question were found in defendant's office files. This evidence would appear to provide fair support for the inference that defendant prepared or had knowledge of

the application for reconsideration in light of *Miller*, defendant's brief on appeal was already prepared. A copy of that brief, which renews

the claims raised in defendant's post-trial motions, was supplied to my chambers shortly after the filing of the motion now before me.

the bills in question. Accordingly, I find defendant's second argument insubstantial.

■ In addition to these factual contentions, defendant raises two essentially legal arguments. The first of these derives from the introduction of certain medical records seized from defendant's office. Defendant argues that the use of these records violated both his Fifth Amendment privilege against self-incrimination and a common-law privilege protecting physician-patient communications. The Fifth Amendment argument rests on the fact that, during the course of the search, defendant assisted the agent in locating the relevant files. Under *United States v. Doe,* — U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), even if the assistance furnished by the defendant to the agent were to be regarded as compelled, the resulting Fifth Amendment immunity would go only to his authentication of the records and not to their contents. At trial, however, defendant's involvement in the records' production was brought out by defendant and not by the Government. *See* Tr. 75–76 (Sept. 12, 1984) (testimony of Agent Trovarello). Defendant cannot, therefore, complain of the admission into evidence of testimony relating to defendant's involvement in the search. And *Doe* clearly establishes that there is no Fifth Amendment privilege inherent in records voluntarily prepared in the course of a business, as were these records. *Doe, supra,* 104 S.Ct. at 1241–42.

■ The claim of physician-patient privilege is similarly insubstantial. Defendant fails to recognize that there is no general federal common-law physician-patient privilege. *Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64 (1977); *Robinson v. Magovern,* 83 F.R.D. 79, 90 (W.D.Pa.1979); E. Cleary, *McCormick on Evidence* §§ 98, 101 (2d ed. 1972) (privilege exists by statute in a number of states). Defendant does note (correctly) that Government access to private medical records is subject to the patients' constitutional right of privacy, *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir.1980), but such protection is not absolute. The *Westinghouse* case sets forth "[t]he factors which should be considered in deciding whether an intrusion into an individual's privacy is justified," 638 F.2d at 577:

> ... the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* As applied to the facts of this case,[3] the *Westinghouse* factors seem easily satisfied. There is a strong public policy, embodied in the mail fraud statute, in deterring fraud of the sort alleged in the indictment. Moreover, since cases like this one will often involve concealment of certain medical data, any blanket rule disallowing doctor's office searches even when justified by probable cause would make prosecution very difficult, because police would be forced to rely on the oral testimony of the parties to the fraud. The injury to the doctor-patient relationship that may be occasioned by disclosure is slight, since the Government introduced only the records of the four patients whose bills were allegedly inflated by defendant. Only fraudulent communications are deterred by such disclosures. Finally, there is no allegation that the Government disclosed irrelevant information, or that its disclosures were broader than was reasonably necessary. In short, I find that defendant's arguments regarding the introduction of the medical records raise questions which are neither novel nor undecided.

Defendant's fourth argument on appeal presents a far more difficult question. Defendant maintains that counsel for the

3. For purposes of this discussion I presume, without deciding, that defendant has standing to invoke the privacy interests of his patients in this case.

Government made improper and inflammatory remarks to the jury during her closing argument. The remarks cited in defendant's brief refer to the existence of a "corrupt situation" in which lawyers exaggerate clients' claims in order to inflate insurance recoveries. Tr. 109–110 (Sept. 12, 1984). Counsel stated that "[t]he corrupt situation that Dr. Colletta was taking advantage of was [that] the lawyers and clients will file claims at times against insurance companies that exaggerate the injuries that are involved." *Id.* at 110. After pointing out that the fraudulent scheme in this case did not necessarily involve billing insurance companies for fictitious accidents, counsel continued:

> So the fictitious accident scheme is not the scheme that I am talking about that Dr. Colletta took advantage of. The situation that Dr. Colletta took advantage of was simply the every day situation of lawyers making claims against insurance companies and trying to exaggerate, perhaps only in an advocacy way, the amount of injuries that their clients have sustained. That was the situation he took advantage of. He knew nobody was going to check this. The lawyer wasn't going to check this.

*Id.* These remarks were made over defendant's objection. Defendant argues on appeal that these remarks were unsupported by any record evidence in this case, and were clearly designed to inflame the jury.

■ Upon reconsideration of defendant's argument, I conclude that there is some force in defendant's contention that the remarks in question should have been excluded, because they referred to matters which were (1) not of record, and (2) irrelevant to defendant's guilt or innocence. *See, e.g., United States v. Monaghan,* 741 F.2d 1434, 1442 (D.C.Cir.1984); *United*

States v. Fowler, 608 F.2d 2, 11–12 (D.C. Cir.1979); *United States v. Small,* 443 F.2d 497, 500 (3d Cir.1971); *United States v. Schwartz,* 325 F.2d 355, 357–58 (3d Cir. 1963). There is certainly enough force in defendant's contention to persuade me that, in the light of *Miller,* defendant has raised "a substantial question of law or fact" within the meaning of subsection (b)(2). The remaining question is whether or not this issue is one which, assuming the Court of Appeals finds error, is "likely to result in reversal or an order for a new trial."

In *United States v. LeFevre,* 483 F.2d 477 (3d Cir.1973), the Court of Appeals for the Third Circuit concluded that statements by the prosecuting attorney that refer to facts not in evidence do not necessarily require that the defendant be granted a new trial. 483 F.2d at 479. Instead, the court is obliged in such instances to "consider the entire record to determine whether the errors were sufficiently prejudicial to have tipped the scales and thereby denied defendant a fair trial." *Id.* In deciding defendant's motion for bail pending appeal, I am obliged to decide this question once removed: rather than simply decide whether or not the error, if error it was, was harmless, I must decide whether it is "likely" within the meaning of the Bail Reform Act that the offending remarks were *not* harmless.

I conclude that permitting counsel for the Government to make the remarks in question—a ruling which, *arguendo,* I will assume to have been erroneous [4]—was an error which is sufficiently likely to lead to an order for a new trial that I must grant defendant's application for bail pending appeal. Although the prosecutor's comments appear to have been directed primarily at lawyers—a class of persons to which defendant does not belong—those comments

---

**4.** This second step of the *Miller* inquiry is separate from the first. Having determined that defendant has raised an issue which is "substantial," I must, for purposes of assessing the likelihood of reversible error, assume that error in fact exists. As the Court of Appeals phrased the likelihood standard, "[a] court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a *contrary* appellate holding is likely to require reversal of the conviction or a new trial." *Miller, supra,* at 23 (emphasis added).

may be taken to imply that defendant knowingly conspired with corrupt plaintiffs' counsel, a crime with which defendant was not charged and as to which no evidence was introduced. The remarks could therefore be seen as prejudicial, because they arguably invited the jury to consider defendant's culpability for a "corrupt situation" which was neither charged nor proved. *Compare United States v. Schwartz,* 325 F.2d 355, 357–58 (3d Cir. 1963) (finding prejudice where prosecutor argued, without supporting evidence, that defendant's key witness was an adulterer who had clandestine meetings with a mistress in hotel rooms) with *United States v. Fowler,* 608 F.2d 2, 11–012 (D.C.Cir.1979) (finding no prejudice where prosecutor argued, without supporting evidence, that prostitutes were typically "sold between pimps, addicted to narcotics"; defendants were accused of violating the White Slave Traffic Act by selling women to prostitution rings).

■ In reaching the conclusion that (1) defendant has raised a "substantial question of law or fact" on appeal, and (2) a contrary appellate ruling on that question would likely lead to an order for a new trial, I do not mean to suggest that in my judgment such an order is probable. *Miller* expressly eschews any calculation that focuses on whether there is at least a fifty-one percent chance of reversal or a new trial. *Miller, supra,* at 23 ("the phrase '*likely* to result in reversal or an order for a new trial' cannot reasonably be construed to require the district court to predict the probability of reversal"). Instead, the court construed the word "likely" in subsection (b)(2) as "going to the significance of the substantial issue to the ultimate disposition of the appeal." *Id.* A question is "likely to result in reversal or an order for a new trial," then, when there is a *significant chance* that a contrary appellate ruling would lead the appellate court to overturn the judgment below. I find that this standard is met here.

## IV.

For the foregoing reasons, I shall enter an Order granting defendant's motion for bail pending appeal.