**UNITED STATES of America, Appellee,**

**v.**

**George CINDRICH, Jr., Appellant.**

**No. 11912.**

United States Court of Appeals Third Circuit.

Argued Nov. 13, 1956.

Decided Jan. 22, 1957.

Leonard Boreman, Pittsburgh, Pa., (Solis Horwitz, Boreman, Parker, Krause & Horwitz, Pittsburgh, Pa., on the brief), for appellant.

Thomas J. Shannon, Pittsburgh, Pa., Asst. U. S. Atty. (D. Malcolm Anderson, Jr., U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., W. D. of Pennsylvania, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted of wilfully attempting to evade and defeat payment of his 1951 income taxes in violation of 26 U.S.C. § 145(b). He was sentenced to imprisonment for 45 days and fined $3,000.

The government's case as to 1951 was founded on the appellant's noninclusion in that year's income of ten specific items aggregating $4,680.60. These were received from business debtors, credited to the customers' account but not listed in any income account of appellant's business. A question and answer statement of appellant was in evidence. That had been taken by an Internal Revenue agent in the presence of appellant's attorney. In it appellant freely admitted the above stated 1951 omissions and 35 others for earlier years. His defense to each was innocent mistake. The following is typical of his explanations:

"A. Well, it must have been a complete slip of memory, either by myself or my bookkeeper. As far as that, that is the only answer I could give to that, it was not anything with intent to keep off the records."

With reference to the bookkeeping procedure in the business he stated:

"A. Well, that part there I left up to the bookkeeper. I didn't know a thing about any kind of books, or any particular thing like as far as bookkeeping is concerned. We would give her all the details and we would give her what we did during the day or what not, and at the end of the year she would turn this whole thing over to Mr. Leo McGeehan of Midland, Pa., and he would make out the tax reports, with the assistance of my bookkeeper for any questions that he asked. He is a real estate man down there, he was the Burgess of Midland and I believe he was the squire down there.

\*  \*  \*  \*  \*  \*

"Q. What kind of books did you maintain in 1947 and 1948? A. I could not answer that. The girl I had working for me, she had that set up, but I didn't know what it was.

"Q. Did you ever look at any books? A. No, sir.

"Q. Did you ever look at your check book? A. No.

"Q. Never looked at your check book? A. No.

"Q. Those records that were kept for 1947 and 1948, what happened to them? A. I could not say; I don't know what happened to them, or where they are, and I don't know whether there was any records there kept in book form, or what it was I don't know.

"Q. Didn't you tell us that those records were lost in moving? A. I may have. I know there was a time when we were moving around things were lost, and being that our office was in the same place where we lived, the little boy usually got into things and a lot of that stuff got lost that way. It was just one thing after another."

The defendant's returns for the years 1947, 1948, 1949 and 1950 reported losses for each year respectively. For the year 1951 his net income was under reported by the above $4,680.60.

Dorothy S. Rodella was employed by the defendant as a bookkeeper in 1947 and the early part of 1948 and was a witness at the trial. She testified as follows:

"A. I worked entirely under Mr. Cindrich's supervision.

"Q. Did he ever check up on your work? A. Yes, sir.

"Q. Well now, what do you mean by checking up on it? A. Well, if I would happen to make an error, why he would call my attention to it.

\*  \*  \*  \*  \*  \*

"Q. Did you ever make errors? A. Well, yes, naturally.

\*  \*  \*  \*  \*  \*

"Q. Who would find your mistakes? A. Mr. Cindrich.

"Q. How would he find them? A. By going over my work.

"Q. Going into the books and records that you kept? A. That's right.

"Q. Did you ever prepare any figures around the end of 1947 for income tax returns? A. Yes, sir.

"Q. Where did you get those figures? A. From the books.

\* \* \* \* \* \*

"Q. Did he give you specific instructions about filing those figures for income tax, for the income tax return? A. Well, after I had made out this report he examined it and then he made the changes."

Helen Cindrich, a sister-in-law of defendant, was bookkeeper from the fall of 1948 until the middle of 1951. She testified as follows:

"Q. Were the amounts of the checks reported on the books or weren't they? A. The checks cashed were not.

\* \* \* \* \* \*

"Q. What would happen when you would cash the checks; will you tell us what you would do about it in a bookkeeping sense? A. I would cash the checks and bring the money back to him, but they would not be recorded in the income.

"Q. Why wouldn't you record them in the income? A. He instructed me not to.

\* \* \* \* \* \*

"Q. Well, just tell us then what happened, or what you discussed with him regarding the records? A. I told him that the checks that were not reported in the income would cause him to pay less income tax."

■ On cross-examination for impeachment purposes, the appellant attempted to show that the witness harbored some enmity against him. The credibility of witnesses is a matter peculiarly within the province of the jury. It will not be reexamined on this appeal. However, it is noted the unshak-en testimony of Miss Rodello more closely parallels Mrs. Cindrich's evidence than does the appellant's.

■ Inference of the fraudulent intent of appellant does not proceed solely from this testimony. The consistent pattern of failing to take similar transactions into income pursued over a period of years, is one incriminating circumstance. The continuance of this same practice after he had an adequate accounting system set up by an accountant tends to negative his protestations of ignorance. That the amounts were always recorded in the customers' accounts but never in the income accounts and the unexplained loss of defendant's records for earlier years bear heavily against appellant's innocent mistakes theory. The jury may well have been substantially impressed by the fact that all the allegedly blameless errors were for the benefit of the defendant and against the interest of the government. While net worth was not the government's position, there was the interesting fact that after filing loss returns for 1946 through 1950, the defendant began construction of a $60,-000 home in 1951. In view of all the circumstances, the intent element was an appropriate jury question under adequate instructions. Spies v. United States, 1943, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418, which is updated by Holland v. United States, 1954, 348 U.S. 121, 75 S. Ct. 127, 99 L.Ed. 150.

■ Appellant contends that much of the evidence on the question of intent related directly to the earlier years in the indictment (1947 and 1949). Since the jury acquitted for those years, the vitality of that evidence to support an inference of fraud for 1951 is challenged. Any seeming jury inconsistency acquitting the defendant for the earlier years could have been attributable to the fact that the deficiencies for those years were based primarily on evidence of bank deposits from which diverse inferences might have been drawn, while for 1951 the government relied entirely on specific income particulars. The acquittals on the other counts may also of course

have resulted from simple leniency. Factually the verdict is sound. Legally on the minor question here of the possible inconsistency of the verdict as said in United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 676, affirmed on other ground, 1956, 350 U.S. 359, 76 S.Ct. 406, rehearing denied 1956, 351 U.S. 904, 76 S.Ct. 692, " * * * rational consistency between the verdicts of a jury is never necessary." To same effect Rankin v. Shayne Brothers, Inc., 1956, 98 U.S.App. D.C. 214, 234 F.2d 35, 37; Siebrand v. Gossnell, 9 Cir., 1956, 234 F.2d 81, 89; United States v. Dotterweich, 1943, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48. With the principle of res judicata not involved, the rule in Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 and United States v. Simon, 3 Cir., 1955, 225 F.2d 260 has no application. Having gone to trial on all counts without objection it is not open to the defendant to object to that procedure after verdict. Logan v. United States, 1892, 144 U.S. 263, 296–297, 12 S.Ct. 617, 36 L.Ed. 429.

■■ Appellant also urges the District Judge erred in refusing to charge the following request:

> "Where a taxpayer engaged in business has reported a large sum as gross receipts of such business but has failed to report a small amount of additional receipts, the smallness of the unreported receipts in itself gives rise to an inference that the failure to report the additional receipts was not done willfully."

The amount of deficiency is not a consideration on the question of the guilty knowledge or the intent element of the crime, although it may be an important element where the deficiency itself is in issue as in a net worth prosecution. The issue before us is not whether the defendant defrauded the government of a substantial sum but whether the deficiency was due to fraud. The disparity between total receipts and the amount of income unreported is not helpful on that problem. In many business enterprises net income represents a very small percentage of total receipts and the above instruction suggests the strange proposition that the failure to report income justifies an inference of the good faith of the defendant. Generally that type of instruction is not demandable as a matter of right, United States v. Pannell, 3 Cir., 1949, 178 F.2d 98. In this trial it would have been affirmatively wrong and the trial judge properly denied it. A review of the instructions on wilfulness and fraudulent intent indicates appellant was accorded the full measure of his rights as defined in Spies v. United States, supra, Holland v. United States, supra, and its companion decisions. This case was properly submitted to the jury under the charge of the court.

The judgment of the district court will be affirmed.