UNITED STATES of America
v.
Martin J. FRONEK and Helen Fronek
Zadylak.

Cr. No. 63–44.

United States District Court
W. D. Pennsylvania.
June 23, 1964.

Gustave Diamon, U. S. Atty., Pittsburgh, Pa., for plaintiff.

John D. Ray, Beaver, Pa., for defendants.

ROSENBERG, District Judge.

This is here on a motion for a new trial after a jury verdict of guilty on all counts in the indictment.

Count one charges Martin J. Fronek and Helen Fronek Zadylak, the defendants, with attempting to evade and defeat a large part of the income tax due and owing by Martin J. Fronek to the United States of America for the calendar year 1956, by filing and causing to be filed a false and fraudulent income tax return in violation of 26 United States Code, § 7201.

Count two is similar to count one, but pertains to the calendar year 1957.

Count three charges Martin J. Fronek with wilfully and knowingly making and subscribing a United States Partnership Return of Income, Form 1065, for the calendar year 1956, which return he did not believe to be true and correct as to every material matter in violation of 26 United States Code, § 7206(1).

Count four is similar to count three, but pertains to the calendar year 1957.

Count five charges Helen Fronek Zadylak with wilfully and knowingly aiding and assisting in the preparation and presentation to the District Director of Internal Revenue at Pittsburgh, Pennsylvania, of the false partnership return of income referred to in count three of the indictment in violation of 26 United States Code, § 7206(2).

Count six is similar to count five, but relates to the false partnership return of income as set forth in count four.

Martin J. Fronek, one of the defendants, was the owner in partnership with his mother of a bottling company known as the Whistle Bottling Company at Connellsville, Pennsylvania. The mother was a silent partner. In 1952, Fronek received a franchise to sell Canada Dry products. It was not, however, until 1956 that Fronek noticed a substantial increase in the business. Fronek's sister, the second defendant Helen Fronek Zadylak, kept books for her brother and made all the entries during these years with the exception of some short periods of time when Fronek himself did it.

When tried before a jury, the Government presented a great deal of evidence of many undeductible amounts posted in a variety of ways. Among these deductions were personal and household expenses of Fronek and amounts of money paid to a brother. Sums of money during the years 1956 and 1957 were shown to be the bank account balances over and above the showing of the books of account.

At the conclusion of the Government's case in chief, the defendants made a motion for judgment of acquittal. The motion was based on the contention that the evidence adduced by the Government was insufficient to permit the jury to find the necessary element of wilfulness. That motion was denied. The defendants then put in a defense and at the conclusion of all the evidence, counsel for the defendants renewed the motion for judgment of acquittal. No additional reasons were given for the motion, and that motion was denied. The jury re-turned a verdict finding each defendant guilty as charged.

The defendants contend that their motion for a directed verdict of acquittal should have been granted because (a) there was no showing of wilfulness on their part and (b) the admission into evidence of the income tax payments in the prior years and the bank balances in the tax-short years were not only erroneous but prejudicial to the defendants.

The defendants argue that the failure of a showing of wilfulness as to both defendants is reflected in the defendants' evidence as submitted at the trial of the case that Fronek was an uneducated man and knew nothing about bookkeeping entries; that Mrs. Zadylak made all the entries in the books without direction from Fronek in accordance with previous custom and for the purpose of providing a book balance; that Fronek did not take all allowable credits due him on real estate taxes and the like; that Mrs. Zadylak took no salary; that the brother to whom the $400 amounts were paid each month during these two years was actually an employee of Fronek; that the defendants honestly believed, although ignorantly, that they were doing nothing wrong and that while erroneous entries were made in the business books no actual alterations were made.

The difficulty with the defendants' arguments here is that the jury heard not only the evidence as presented by the defendants in these regards, but also heard all of the other evidence in the case and then arrived at its verdicts. This additional evidence consisted in part of the facts that: Mrs. Zadylak was a high school graduate and knew that such ordinary deductions as she made in the bottling business would not be allowable in her household; that while Fronek held only an incompleted education, he was capable of keeping club books as a steward; and that while all book entries were made, except when made occasionally by Fronek, by Mrs. Zadylak, Fronek, nevertheless, had the final look at the income tax returns and the amounts pay-

able as taxes and of such balances in the bank as he had during these two years. Although Mrs. Zadylak worked for no salary, it was nevertheless a matter for the jury's determination to see, if for nothing, whether as a matter of generosity, although this in itself could not be immunizing.

The defendants' motion enumerates seven grounds, but by the submitted brief counsel urges these points:

I. The Court erred in denying defendants' motion for judgment of acquittal since the evidence of wilful intent adduced by the Government was insufficient to justify the submission of that issue to the jury.

II. The Court erred in admitting, over defendants' objections, evidence as to the amount of taxes paid by Martin J. Fronek for the years 1953, 1954 and 1955.

III. The Court erred in admitting, over defendants' objection, evidence as to the increases in the Whistle Bottling Company's checking account for the years 1956 and 1957.

IV. The Court "may have misled" the jury in instructing the jury on the law relating to evidence of prior similar acts.

None of the defendants' points is basically taken.

■ It is well established that in considering the sufficiency of the evidence on a motion for judgment of acquittal, the trial court must consider the evidence and the inferences to be drawn therefrom in the light most favorable to the Government. McKenna v. United States, C.A.8, 1956, 232 F.2d 431, 435, 436; Hoyer v. United States, C.A.8, 1955, 223 F.2d 134; Thomas v. United States, 1954, 93 U.S.App.D.C. 392, 211 F.2d 45; United States v. Yeoman-Henderson, C.A.7, 1952, 193 F.2d 867.

■ As stated by the Court in Yeoman-Henderson case, supra, at page 869:

"When a motion for a judgment of acquittal is made, the sole duty of the trial judge is to determine whether substantial evidence, taken in the light most favorable to the government, tends to show the defendant is guilty beyond a reasonable doubt. * * *"

The defendants are charged in counts one and two of the indictment with the violation of 26 United States Code, § 7201. That statute provides in its pertinent part as follows:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title * * * shall * * * be guilty of a felony * * *."

■ The elements of this offense which the Government must prove in order to sustain a conviction are:

(1) An attempt to evade and defeat. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

(2) Wilfulness. United States v. Martell, C.A.3, 1952, 199 F.2d 670.

(3) An additional tax due and owing. United States v. Schenck, C.A.2, 1942, 126 F.2d 702.

The defendants do not contest that the Government proved that there was a substantial additional tax due and owing to the United States of America by the defendant Fronek for each of the calendar years 1956 and 1957. Indeed, their own Certified Public Accountant, Eugene F. Coniff, who testified on behalf of the defendants, admitted on cross-examination that the most favorable tax computation that he had made for the defendant Fronek showed a tax due of $2,246 for the year 1956 (Fronek paid $186.69 in that year) and a tax due of $3,351 for the year 1957 (Fronek reported and paid $221.91 in that year). Tr. pgs. 745, 746.

The defendants, however, contend that the understatement of income and tax on the personal income tax returns of Fronek for the years 1956 and 1957, and also, although they make no specific reference thereto in their brief, the false statements contained in the partnership return of income for those years, were due to honest mistakes. They contend, accordingly, that the Government

failed to prove the necessary element of wilfulness, and that therefore, the Court should have granted their motion for judgment of acquittal.

In Spies v. United States, supra, 317 U.S. at page 499, 63 S.Ct. at page 368, the Supreme Court set forth several examples of the type of conduct from which a wilful attempt to evade and defeat taxes could be inferred, it stated:

"By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents * * * *handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.* If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." (Emphasis supplied.)

It is also the law that wilfulness may be inferred from a consistent pattern of understatement of income. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Frank, C.A.3, 1957, 245 F.2d 284; Blackwell v. United States, C.A.8, 1957, 244 F.2d 423, 429; United States v. Alker, C.A.3, 1958, 260 F.2d 135, 148; Epstein v. United States, C.A.6, 1957, 246 F.2d 563; Leeby v. United States, C.A.8, 1951, 192 F.2d 331, 333.

In United States v. Alker, supra, 260 F.2d at page 148, our Court of Appeals for the Third Circuit states:

"Second, although mere understatement of *tax liability* cannot substantiate the charge, *consistent understatement* is evidence of wilfulness." (Emphasis supplied.)

Viewed in the light of the foregoing authorities, the evidence in this case clearly established that Martin J. Fronek and Helen Fronek Zadylak know-

ingly and wilfully attempted to evade and defeat the income taxes of Martin J. Fronek for the years 1956 and 1957, and knowingly and wilfully subscribed to, and aided in the preparation of, respectively, false partnership returns of income for Whistle Bottling Company for those years.

The books of Whistle Bottling Company for each of the years in question contained numerous false entries. These books purporting to reflect the business expenditures of that company, included as business expenditures such purely personal and non-deductible items as Fronek's personal expenditures for milk, gas, water, electric, coal, TV repairs, clothing, medical and nursing care, stock purchases, insurance premiums, social club dues (including dues for his brother Andrew), furnace repairs, house remodeling, real estate taxes, car payments for his brother Andrew's purchase of a station wagon, and loans of approximately $400 per month to his brother Andrew.

These books were kept during the indictment years for the most part by Mrs. Zadylak. However, Fronek also made entries in the books for several months during this period, and his work included similar false entries. (Tr. pgs. 626, 627.) In addition to this, Mrs. Zadylak testified that when she began to keep the books for her brother she followed the system which he had been using, which was to include personal items in business columns.

These purely personal expenditures of Fronek, which were recorded as business expenses of Whistle Bottling Company totaled $8,683.07 in 1956, of which amount $5,398.20 was for loans to the brother Andrew. In 1957 these items totaled $9,607.64 of which amount $5,-641.99 was for loans to Andrew.

At the end of the year Mrs. Zadylak totalled each expense column in the book, which she kept, on to a summary sheet in the book. This included, to her knowledge, personal expenses as well as business expenses. Fronek then utilized these summary sheets in the preparation of this partnership return and his per-

sonal income tax return. Mrs. Zadylak was aware of this. She knew that some of these personal expenditures were non-deductible.

This systematic and consistent pattern of making false entries then was evidence of wilfulness under both Spies, supra, and Holland, supra, even if we would not have had the júdicial admissions of Mrs. Zadylak that she knew these personal expenditures were not deductible and as both defendants knew they were not properly to be included in the partner-ship return, since, aside from any tech-nical consideration of their deductibility for tax purposes, they were simply not partnership expenses. If there was no other evidence than this there would have been sufficient evidence of wilfulness to submit to the jury.

But there was more. There was evi-dence bearing on Fronek's knowledge that he was making more money as profit than his returns showed:

(1) While he was reporting in 1956 ordinary income of $941.43 from the Whistle Bottling Company, the checking account for that company (which the evidence showed was essentially Martin J. Fronek) during that year increased by $17,916.35 (Tr. pgs. 372–374). While he was reporting in 1957 net profit from Whistle Bottling Company of $1,654.42, the checking account for that company during that year increased by $28,024.56 (Tr. pgs. 373–374).

In United States v. Cindrich, C.A.3, 1957, 241 F.2d 54, at page 56, the Court stated:

"While net worth was not the government's position, there was the interesting fact that after filing loss returns for 1946 through 1950, the defendant began construction of a $60,000 home in 1951."

Of course, Fronek did not have a loss return, but he was not far from it, and the $46,000 increase in his checking ac-count was not at all consistent with his reported income. All of this was evi-dence from which the jury could have properly inferred knowledge of under-

statement on his part, and therefore, wilfulness.

(2) Fronek testified that he was re-cording secretary for a social club in 1956 and 1957, and that he would devote from five to fifteen hours a month to this job. He testified that in 1956 he re-ceived $515 for this part-time work, which he admitted was in a sense a pas-time. In that same year he reported as income from the business to which he devoted six days a week and from eight to fourteen hours each day, from the business in which he risked his capital, $941.43. This was competent evidence from which the jury could infer knowl-edge, intent and wilfulness.

(3) Fronek testified that he received the Canada Dry franchise in 1952, but that the first year that he could notice a substantial increase in his business was 1956. Yet in 1953, Fronek paid taxes of $146.57; in 1954, $54.77; in 1955, $53.60; in 1956 he paid $66.69, but a dependency credit was disallowed and he then paid an additional $120. In 1957, he paid $171.91. So that despite his own admission that his business was sub-stantially better in 1956 and 1957 than ever before, he was still reporting sub-stantially the same tax due (Tr. pgs. 419–420). The jury could properly infer knowledge of a fraudulent return from this evidence.

(4) A substantial overstatement of ex-penses of the Whistle Bottling Company on the partnership returns for 1956 and 1957 with a correspondingly substantial understatement of net profits in those years resulted when Fronek duplicated certain expenses on the returns. These amounted to $19,370.00 in 1956, and $24,-766.16 in 1957. This constituted the conduct the likely effect of which would be to mislead or to conceal spoken of in Spies, supra, 317 U.S. page 499, 63 S.Ct. page 368.

The defendants seeks to discount this and the other evidence of false expendi-ture deductions as innocent mistakes. However, that was a question for the jury as to whether this was wilfully and knowingly or innocently done. The

amounts involved, the fact that it was done two years in succession, the fact that there mistakes inured to the benefit of Fronek, considered with the other evidence, presented contradiction against the innocent mistake theory sufficient for a determination of wilfulness by the jury to support its verdicts of guilt.

As stated by our Court of Appeals in Cindrich, supra, 241 F.2d at page 56, "The jury may well have been substantially impressed by the fact that all the alleged blameless errors were for the benefit of the defendant and against the interest of the government."

■ The defendants complain that the admission into evidence of the Fronek income tax payments for the years 1953, 1954 and 1955 and of the bank balances for the years 1956 and 1957 were not only erroneous but were also prejudicial to them. They argue that the admission of the income tax payments for these past three years was contrary to the holding in Greenberg v. United States, C.A.1, 1960, 280 F.2d 472. There the trial court admitted into evidence the payment of income tax in the sum of $17.81 for the year 1943. The tax charges revolved about the years 1952 and 1953. The harm there consisted not only of the evidence of admitting the amount of the income tax payment for the year 1943, but in the attack as made by the United States Attorney to the jury in accusing the defendant of a lack of patriotism in not helping to support the Government during the war. That case is totally and factually different from the instant case.

The defendants also misdirect the reason for admission into evidence of these income tax payments for the prior years and the bank balances for the tax chargeable years. The defendants argue that these amounts for the prior years could only be introduced if there were violations in those years which would have shown a pattern by which intent and wilfulness might have been presented to the jury. They misinterpret the reason for introducing these matters. It was not to attack anything done by the defendants in the prior years, but rather to show, by the defendants' own admissions, that these past years were proper ones, and the similarity between these past proper years and 1956 and 1957. The Canada Dry distributorship expanded Fronek's business in 1956 and 1957. But the income tax returns for these two years were not dissimilar to the prior years. The evidence thus shows a glaring discrepancy which the defendants could not have failed to overlook if it was, as they claim, an honest mistake. This was proper evidence for submission to the jury. The jury did not think it was an honest mistake.

This was the evidence presenting a pattern of action by the defendants which the Government presented to the jury. Any other pattern by the defendants, as now argued, exists nowhere in the record especially insofar as they relate to payments of income taxes in prior years. The evidence of pattern as submitted by the Government in its case in chief presented sufficient basis for the jury's determination. The denial by the defendants of such a pattern does not convert the character of the Government's testimony. The fact that Mrs. Zadylak did not know what else to do with the non-deductible items of expenditures than what she did with them was not convincing to the jury. Fronek's protestations of ignorance of what Mrs. Zadylak did because he did not tell Mrs. Zadylak what to do with these amounts or that he didn't know anything about bookkeeping was evidently not accepted by the jury as against the evidence submitted by the Government in the case as a whole. Fronek's bank balances were there for him to see and to know that he was doing much more business than in the previous years.

Since all the matters were properly before the jury and it considered and determined these upon the evidence with proper instructions from the trial judge, the defendants' motion lacks merit and must be denied.