**UNITED STATES of America**

v.

**Joseph FRANK.**

**Cr. No. 14538.**

United States District Court
W. D. Pennsylvania.

Dec. 4, 1956.

D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for plaintiff.

Alexander Cooper, Pittsburgh, Pa., Robert M. Taylor, Philadelphia, Pa., for defendant.

JOHN L. MILLER, District Judge.

The defendant, Joseph Frank, was tried and convicted under an indictment in one count for wilfully and knowingly attemping to defeat a large part of the income tax due and owing by him and his wife for the year 1948. In the indictment it is averred that defendant, in violation of section 145(b), 26 U.S.C.A. (I.R.C.1939), filed a fraudulent joint return for himself and his wife showing a net income for 1948 of $6,433.89 and a tax due of $657.70, whereas, it is averred, defendant knew their joint net income was $25,180.61 and the tax due thereon was $5,536.24. The government's proof was circumstantial and was built on what it called "the bank deposit and expenditures" method corroborated by the more frequently used "net worth" method.

A hearing prior to the trial was held upon the defendant's motion to suppress evidence allegedly obtained from him by the fraud and deceit of the agents of the government and in due course, the court entered an opinion and order refusing

the motion. D.C. 151 F.Supp. 864. The defendant, at the trial, did not take the stand and offered no testimony but brought out his defense on cross-examination of the government's witnesses. At the close of the case, the court refused the defendant's renewed motion to suppress the evidence but reserved decision upon a motion for judgment of acquittal. Rule 29(b), F.R.Crim.P. 18 U.S.C.A. The defendant has also filed a motion for a new trial, which among other assignments raises the propriety of the court's ruling on the motion to suppress in light of additional evidence developed during the trial. Inasmuch as the motions for judgment of acquittal and for a new trial duplicate each other, they will not be considered separately.

■ The facts as developed at the trial will be reviewed briefly with the principle in mind that in determining the sufficiency of the evidence to support the verdict, the court is required to take the view of the evidence which is most favorable to the government and to give the government the benefit of all inferences which reasonably may be drawn in its favor. Myres v. United States, 8 Cir., 1949, 174 F.2d 329, 332.

The government's investigating analysis, as detailed by Agent Good, special agent in charge of the criminal investigation, showed that during 1948, a total of $39,056.50 had been deposited in the defendant's various bank accounts in regular and periodic deposits. Cash loans of the defendant to others of $5,000 could not be traced by any record to the defendant's bank accounts, making a total of deposits and expenditures of $44,-056.50. Revenue agents then proceeded to eliminate from the $44,056.50 all reported items of income and all those they considered non-income items and eliminated a total of $25,309.78, concluding that defendant had understated his 1948 income by $18,746.22. It was established that the defendant had received no inheritances or gifts to account for his apparent affluence in 1948, and that his wife and dependents had no independent income in that year. A detailed investigation of the defendant's bank records, cancelled checks and check stubs was made, each bank and savings deposit was analyzed, cancelled checks were compared with ledgers, and a thorough survey was made of the books of the Royal Vending Service, one of the defendant's reported sources of income in 1948. Such financial transactions as were disclosed by the investigation were considered and allowances for non-taxable items revealed therein were made. In support of its claim that defendant had substantially understated his income for 1948, the government supplemented its proof under the bank deposits theory with a computation made under the net worth theory which also showed a substantial deficiency in the defendant's reported income.

■ From the reported cases, it appears that in order to successfully make use of the bank deposits method, the government must present evidence to show that during the prosecution year the taxpayer was engaged in an income-producing business or calling; that he made deposits of funds into bank accounts; and that an adequate investigation of the deposits was made by government agents in order to negative the likelihood that the deposits arose from some non-taxable source. As the court states in United States v. Doyle, 7 Cir., 1956, 234 F.2d 788, 793:

"Of course, proof under the bank deposit theory is circumstantial in nature, but we know of no reason why such deposits may not be considered in determining income, when there is no evidence that they represent anything other than income. In other words, such evidence will support an inference that the deposits are taxable. It may be that they are regularly and periodically made; it may be that they are made at irregular intervals; it may be that they are made from currency removed from safety deposit boxes, but, as long as the taxpayer is conducting a cash business and the deposit books show substantial curren-

cy deposits and there is proof of removals from the safety deposit boxes into deposits, the circumstances are proper to be considered in determining whether the deposits represent current taxable receipts, if a thorough investigating analysis of the deposits is made, as was the case here and as is required generally, Buttermore v. United States, 6 Cir., 180 F.2d 853."

See also United States v. Venuto, 3 Cir., 1950, 182 F.2d 519; Stinnett v. United States, 4 Cir., 1949, 173 F.2d 129, certiorari denied 337 U.S. 957, 69 S.Ct. 1531, 93 L.Ed. 1756; Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394.

■ The record contains substantial credible evidence from which a jury could conclude beyond a reasonable doubt that during the prosecution year the defendant had an income-producing business or calling, that he made periodic deposits into his bank accounts, that the excess of deposits, together with expenditures, over reported income and deductions reflected current income, and that there was a substantial under-reporting of income for the year 1948.

■ There are two contentions which will be disposed of preliminarily. The first, not assigned but discussed in defendant's brief, is that the government has not showed the prosecution was commenced within the statutory period of six years after the date upon which the defendant's 1948 income tax return was filed. The present indictment was filed on March 9, 1955, but there was no direct evidence of the precise date on which the return had been filed. The return, however, contained the undisputed signature of the defendant followed by the date "3–11–49" and it has not been contended either that the date was affixed by an unauthorized person or that it was incorrect when entered. The defendant's accountant, whose firm prepared the return, testified without objection that his records showed the return was not mailed to the defendant until March 9, 1949, It is apparent, in the absence of a scintilla of countervailing proof, that the return could not have been filed until after that date.

■■ The second preliminary point deals with the defendant's contention that he was prejudiced by newspaper, radio and television publicity during the course of the trial, particularly by a newspaper article appearing on the evening before the case was submitted to the jury in which past criminal convictions of the defendant were detailed. The determination as to when adverse commentary during the course of a criminal prosecution reaches such proportions that a fair trial can not be had by the defendant is one usually left to the discretion of the trial judge. Paschen v. United States, 7 Cir., 1934, 70 F.2d 491. During the progress of the trial, the jury was cautioned repeatedly to refrain from reading articles or listening to broadcasts pertaining to the case and unlike the situation discussed in Briggs v. United States, 6 Cir., 1955, 221 F.2d 636, 639, there is no evidence that the publicity defendant refers to was so extensive that it should be assumed the jury disregarded the instructions of the court. Moreover, while the article which reviewed the defendant's criminal record was poorly timed, the members of the jury said they had not read it.

The defendant insists that the government failed to prove a "likely source" of the taxable unreported income it claimed he received in 1948, as required by Holland v. United States, 1954, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150. But see United States v. Adonis, 3 Cir., 1955, 221 F.2d 717, 719–720 and United States v. Ford, 2 Cir., 1956, 237 F.2d 57, 65. However, the government says that since this was essentially a bank deposit case all it needed to show was a "business or calling" from which the jury could infer defendant's unreported income arose. The requirement of a "business or calling" was supplied by proof that the defendant received salary and partnership earnings from the Royal Vending Service, a company which was engaged in the business of dispensing

cigarettes through coin machines. Analysis of the bank deposits theory indicates that under the circumstances presented, the Royal Vending Service could be considered a "business or calling" producing the defendant's alleged unreported income even in the absence of evidence that the partnership tax returns were incorrect or that it was capable of producing more profit than its books indicated. Furthermore, the jury could have inferred that the defendant had a "likely source" of unreported taxable income either in undisclosed gambling activities or in undisclosed "pin ball" operations. Defendant's tax history showed income from "sporting enterprises," an admitted euphemism for gambling, in 1938, 1939, 1940, 1941, 1944, 1949, and 1950. Gambling does not give rise to a state of affairs presumed to continue once established; but the evidence considered as a whole permitted an inference that defendant had gambling winnings in 1948.

The government also showed that there was found among the defendant's papers a receipt stub dated July 1948, bearing an entry of $100 and marked, "Salary from pin ball." This particular item was unamplified except by evidence showing that defendant's known connection with the Homestead Amusement Company, a pin ball business, formerly run by him and David Frank, a relative, had terminated in 1942, and by evidence of statements made by David Frank and the defendant that defendant "may have" or "probably" received income from the pin ball business during the years 1945 to 1950. Certainly the evidence was not strong but the stub was connected with the indictment year and could be considered a "significant indication" of a likely source of unreported income. See United States v. Adonis, supra, 221 F.2d at page 720.

■ Net worth proof, used here for purposes of corroboration, is not necessarily required in a typical bank deposits case. Cf. Stinnett v. United States, supra. It is argued that the net worth proof offered was unreliable because the government failed to prove, with exactness, the opening net worth statement of December 31, 1947. Both of the parties had prepared net worth statements opening as of January 1, 1945. The principal difference between the two lay in the exclusion from the government's statement of $50,000 in undeposited cash which the defendant said he had on hand as of January 1, 1945. As a result of the foregoing exclusion, the government did not attribute to the defendant any cash on hand as of January 1, 1948, whereas, according to the defendant, he had about $29,000. Whether the question is posed under a net worth or bank deposits framework, it can be conceded that the government had a duty to negate the existence of the claimed cash hoard. Undoubtedly the burden could be met sufficiently for both theories provided the government established its opening net worth statement, not with exactness as defendant says, but with "reasonable certainty." Holland v. United States, supra, 348 U.S. at page 132, 75 S.Ct. at page 133; Campodonico v. United States, 9 Cir., 1955, 222 F.2d 310, 314, certiorari denied 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742.

■ Initially, the government was armed with the defendant's own admission to revenue agents on June 23, 1952, that all the cash he had as of the beginning of 1945 was in the bank (about $10,-000) or in his pocket and with his stated recollection that he had not kept cash in a safe deposit box. Such an admission assumes sufficient importance in the government's case as to bring it within the standard set forth in Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, and thus it must be corroborated by substantial independent evidence. This court has no difficulty in concluding that there was ample independent evidence to support the reliability of the defendant's admission. His contradictory statements made a few months later after his net worth statement had been submitted claiming an unbanked cash hoard of $50,000 kept in a safe deposit box (which could have

been "$40,000, $50,000, $30,000, $5,000, or $10,000") or as he said, "the biggest part or most all of it," in a series of three or four strong boxes at his home over the years, lacked convincing force and could very well have been taken by the jury as evidence of a wilful misrepresentation as to the existence of such a fund.[1] In order to corroborate defendant's admission of June 23, 1952, the government could properly refer to the defendant's prior income tax filing history, Smith v. United States, supra, 348 U.S. at page 158, 75 S.Ct. at page 200, which strongly indicated the unlikelihood of his having cash savings of $50,000 at the beginning of 1945, an amount that defendant attributed to savings made from income realized by him during the years 1938 to 1944, inclusive. It was shown by the defendant's prior tax returns that until the year 1937, he had either not filed a return or paid a tax on income declared, thus indicating modest circumstances in those years. There was further evidence on the basis of his tax history that the most defendant could have earned in the eighteen years between 1920 and 1937 was about $65,000, thus negativing the likelihood of any substantial savings as of 1938. Defendant's total reported taxable income for the years 1938 to 1944, inclusive, was $70,445.22 (including $49.77 separately reported by his wife in 1942) on which income taxes of $9,413.28 were paid. Allowing credit to defendant for $5,838.55 representing depreciation claimed in those years and perhaps unspent, there would have remained about $66,000 from which would have to be deducted further the cost of maintaining the defendant and his family and the possible cost of any assets purchased over the seven year period. The defendant's alleged $50,000 cash saving was possible under his contention by allowing $2,000 a year for living expenses and nothing for the purchase of assets. On the other hand, while a strict parallel was not possible, the evidence showed the defendant's cost of living in 1945 and 1946 was approximately $13,000 and $11,000 and the jury may easily have determined that the average of $2,000 for the prior years was too low. Moreover, a certificate of assessment and payment of tax prepared by the internal revenue service and admitted without objection showed a tax due from the defendant for the year 1941, in the amount of $4,808.46, which was not finally paid by the defendant until October, 1944, after a long series of small payments of $50 and $100 and the filing of a government lien against him. There was also evidence showing that in the year 1945, a group of 24 bonds in various denominations held in the names either of the defendant or his wife were redeemed prior to maturity for a total of about $1,200. Such circumstances are not consistent with defendant's claim of large savings in the years in question. In addition, the jury could have decided that a significant part of the defendant's 1938–1944 reported income had been used in the purchase and construction of defendant's Homestead rental property. The property was purchased in 1942, at an original cost of $32,000 and subsequent improvements had increased the cost to about $37,000. A $13,000 construction mortgage had been obtained on the property in 1942, on which payments of interest and principal were regularly made. In January of 1945, the remaining balance of $5,662.61 was paid off in one sum and the facts show that the defendant had obtained a loan or excess drawings about that time from the Royal Vending Service for approximately that amount. The circumstances thus detailed were sufficient to refute the defendant's contention that the whole cost of the property had been made up out of net worth accumulated prior to its purchase. Other testimony showed that in the first six months of 1945, defendant had made additional excessive drawings and loans in a total amount of about $4,500 from the Royal Vending Service. Further corroboration of the defendant's

1. Cf. United States v. Adonis, supra.

statement that he had no sizable accumulation of undeposited cash as of 1945 was evidenced by the record of the defendant's bank deposits for the years 1938–1944, which showed total deposits during that period of $78,000. It may be that defendant's accountant, Love, reconciled the record of these large deposits with the theory of an additional $50,000 cash not in the bank although it may be noted some of his calculations were open to doubt. They need not be gone into in detail since even were the reconciliation sound, it did not carry with it any necessary refutation of the government's prima facie showing that the cash hoard was nonexistent.

But, says the defendant, the government nevertheless failed to prove that the unidentified 1948 deposits represented taxable income to him. He was not, he argues, given credit for whatever money he may have had in his pocket as of January 1, 1945; for sums representing proceeds of checks cashed and perhaps redeposited; for certain items representing allowable depreciation which he might have retained; for sums which his dependent son could have received and could have turned over to him; for moneys he could have had on hand at the end of 1947, and not deposited until 1948; and for large non-taxable business drawings in 1946, which he could have retained and which he assumes were incontrovertibly established by the work sheets of his accountant. Defendant relies, in part, on United States v. Caserta, 3 Cir., 1952, 199 F.2d 905 and United States v. Fenwick, 7 Cir., 1949, 177 F.2d 488, cases which were decided prior to the comprehensive analysis of the net worth method in Holland v. United States, supra, and which, moreover, presented a type of circumstantial proof different in quality from the evidence of this case. While defendant professedly recognizes the rule that the government must prove its case beyond a reasonable doubt, in reality the standard he insists upon is that the government's evidence should negative all possible non-taxable sources of the alleged unreported income. This, of course, is not required. Holland v. United States, supra, 348 U.S. at pages 137–138, 75 S.Ct. at page 136; Campodonico v. United States, supra; Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459, 463.

Nor is this court persuaded that the verdict should be set aside because of the alleged failure of the government to investigate relevant leads to the non-taxable sources of defendant's 1948 funds. Compare Holland v. United States, supra, 348 U.S. at pages 135–136, 75 S.Ct. at page 135. The defendant points to affidavits submitted by David Frank, co-tenant of defendant's safe deposit box, and Jerry Hirsch, a bookkeeper employed by the defendant, in which both persons indicate they had personal knowledge that defendant kept large sums of cash in his safe deposit box during the period in question. The government took a skeptical view of these affidavits and not much was done with respect to them. It is clear from the decision in the Holland case that an area of discretion remains to the government in determining both when such leads are "relevant" and when they are "reasonably susceptible of being checked." Here, in view of the detailed investigation made by the government, this court can not say that the evidence was insufficient to go to the jury or that the government's failure to exhaust relevant leads was required to be determined as a matter of law.

It is next contended that the court erred in permitting the government's expert witness to testify to a hypothetical question over the defendant's objection on the ground that the hypothetical question did not embrace all of the relevant facts upon which the question should be posed. Of course, this is an area in which the trial judge has some discretion so long as the jury is left free to exercise its own judgment on the worth and weight of testimony. United States v. Johnson, 1942, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Myres v. United States, supra, 174 F.2d

at page 336. The jury was aware of the defendant's contentions with respect to allowances which should have been made in computing his tax. In view of the court's instructions, as to which no complaint is made, and the competent cross-examination by defendant's counsel, the jury could not have been misled into the idea that the government's calculation of the defendant's tax was conclusive.

A further point raised by the defendant is that the government was bound by the testimony of the defendant's accountant, who, when called as a witness for the prosecution, gave testimony supporting the defendant's net worth calculations. As a matter of policy, it is undesirable that the government should be foreclosed by the testimony of a witness who had been professionally employed by the defendant for many years, associated with the defendant from the outset of the government's investigation and visibly allied with him during the trial. Indeed, it seems that the formal rule by which a party is held bound by the testimony of any witness he calls has been repudiated. See Johnson v. Baltimore & Ohio Railroad Co., 3 Cir., 1953, 208 F.2d 633, certiorari denied Baltimore & Ohio Railroad Co. v. Johnson, 347 U.S. 943, 74 S.Ct. 639, 98 L.Ed. 1091. On the other hand, as this court has held in other cases, government prosecutors have an affirmative duty to disclose material evidence which may be favorable to defendants in criminal cases. Cf. United States ex rel. Thompson v. Dye, 3 Cir., 1955, 221 F.2d 763. See Holland v. United States, supra, 348 U.S. at page 136, 75 S.Ct. at page 135. No reason for departing from that wholesome principle appears.

The motion to suppress evidence was fully considered prior to the trial. In the opinion of the court, nothing adduced at the trial affected the admissibility of the evidence obtained by the government from the defendant.

An Order will be entered denying the motion for judgment of acquittal and the motion for a new trial.