UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard H. RAMSDELL, Defendant-
Appellant.

No. 71-1014.

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1971.

Rehearing Denied Dec. 10, 1971.

James R. Briscoe, Denver, Colo., for defendant-appellant.

Charles W. Johnson, Asst. U. S. Atty. Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Ramsdell was indicted on three counts of violation of 26 U.S.C. § 7201 (Internal Revenue Code) charging him with willful attempt to evade or defeat income taxes owed by him for the years 1963, 1964 and 1965. He was found guilty after trial by jury and sentenced to two years' imprisonment on each count, the sentences to run concurrently.

In this appeal, he asserts insufficiency of substantial evidence to support the jury verdict. Additionally, he charges the reconstruction of his income by the "bank deposits" method to be deficient due to failure of the government to investigate information given by him concerning other sources of money. This failure to investigate, he claims, defeats the government's reconstruction of his income, thus defeating the case against him, and thereby entitling him to judgment of acquittal under F.R.Crim.P. Rule 29.

During the years in question, Ramsdell operated two parking garages in Denver, Colorado, under the name All State Parking, a sole proprietorship. These garages catered to both daily and monthly parking tenants. He maintained a business account for the garages at a Denver bank. He also kept a joint personal account with his wife at the same bank. In addition, he had three savings accounts in local savings institutions.

Ramsdell had no bookkeeper for the business. The system of accounting used by him in keeping business records would be best classified as a "collection-destruction" system. Daily parking receipts, usually cash, were tallied against the parking tickets. When balanced, the tickets were destroyed. Likewise, an accounts receivable record was maintained for the monthly parking tenants. When payment was received from a tenant, usually by check, the appropriate account record was destroyed. In reporting the receipts to his lessors for rental purposes, Ramsdell totaled the check receipts, then "guessed" the amount of cash receipts, being careful not to exceed a certain amount which would impose a rental on his gross income, a "double rent". The only remaining records by which an indication of business income, and likewise appellant's personal income, can be gleaned is checking account deposit slips, canceled checks and check stubs, bank statements and savings account records.

Most of the deposits to the All State Parking account, according to Ramsdell, were made up of the business receipts. From this account he wrote checks for the business expenses. He also drew checks on this account for his salary. He also took cash, but kept no record of the amount. In determining his individual income, he included all the checks but only part of the cash. It is the unreported cash which formed the basis for Ramsdell's conviction.

I.R.S. agents reconstructed appellant's income using the bank deposits method in which all bank accounts with which the taxpayer is connected are analyzed on a transaction by transaction basis. In this manner, all non-taxable items, such as inter-account transfers, etc., are eliminated, and all deductible business and personal expenses are segregated and deducted. The remaining balance is a reasonably accurate indicator of taxable income.

Based on the reconstructed income, it is obvious, and both parties agree, that frequent unexplained and unreported deposits of cash were made to the several Ramsdell accounts. The aggregate of these deposits was quite substantial. The government's explanation is that the cash came from monies received by All State Parking which Ramsdell took without first depositing. The money, as income to the business, would likewise constitute taxable income to the appellant. Ramsdell, on the other hand, contends the cash came from non-income sources, including (1) reimbursement of capital originally advanced to the business, and (2) large cash gifts from his father.

No records were kept of the amount of capital originally advanced, nor was there an accurate accounting of what portion of the cash taken from the business represented that return of capital. Likewise, no record was kept indicating the amount of cash he received from his father. The only testimony relative to this was that it was between $3,000 and $5,000 for 1963 and 1964, and $2,000 in 1965, which he received before his father died. He also claims another $2,000 gift in 1965 received from his mother after his father's death.

The explanation given for these large amounts of cash gifts was that his father was retired, over 75 years of age, and on social security, but was still painting houses. He sent the money he earned to his son to avoid paying tax on it.

It should be noted that as a part of his defense, appellant introduced an accountant to testify as to appellant's tax deficiencies for each of the years. His own testimony indicates his computations were substantially similar to the I.R.S. agent's with the exception that he reduced appellant's taxable income by $4,000 for the years 1963 and 1964 and by $3,000 in 1965. These, he explained, represented the non-taxable gifts from the father, based on information supplied by Ramsdell. His testimony, of course, reflected a substantial decrease in the tax deficiency. He further testified that a tax deficiency would still exist for the years 1963 ($441.01) and 1965 ($1,622.96), although there would be an overpayment for 1964 ($28.45).

The burden of proof which the government must successfully bear to obtain a conviction under 26 U.S.C. § 7201 has been recently defined by this court in United States v. Dowell, 446 F.2d 145 (10th Cir. 1971). We there held:

> The Government must prove beyond a reasonable doubt that there was an attempt made voluntarily and intentionally, and with the specific intent to keep from the Government a tax imposed by the tax laws. The accused must be shown by the evidence to have been under a duty to pay the Government and must be shown to have known that it was his legal duty to pay.

■ A preclusive requisite to conviction under this statute is the proof of additional tax owing, that is, "the existence of a tax deficiency." United States v. Brown, 446 F.2d 1119 (10th Cir. 1971). It is at this juncture that appellant first assaults the evidence against him. He contends the government's failure to investigate his allegation of cash gifts from his father should have rendered the bank deposits reconstruction of his income fatally defective, thereby preventing its introduction in evidence against him.[1]

The government's investigative obligation in response to taxpayer "leads" as to sources of non-taxable income has been defined in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954). It was there held that to avoid injustice to the taxpayer, the government must investigate the relevant leads furnished by the taxpayer, that is, those which are "reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence."[2]

■ In reconstructing income, it is not incumbent upon the government to negate all asserted sources of non-taxable

---

1. "When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury." Holland v. United States, 348 U.S. 121, 136, 75 S.Ct. 127, 135, 99 L.Ed. 150 (1954).

2. *See also* United States v. Frank, 151 F. Supp. 866, 872 (W.D.Pa.1956), aff'd 245 F.2d 284 (3rd Cir. 1957), cert. denied 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35.

income. Rather, it is obligated only to investigate those sources which come within the Holland guidelines. In doing this, "The government is not required to go beyond records reasonably available * * *." Holland v. United States, 209 F.2d 516, 519 (10th Cir. 1954). Here, there were no records available from either the father, who was deceased at the time of trial, nor from appellant himself.

The government enjoys some discretion in the area of investigation of leads. It is not, however, the final arbiter in determining which leads are "relevant" or "reasonably susceptible of being checked." The evidence here devolves into a factual determination by the jury as to whether the government was unreasonable in its failure to investigate the taxpayer's alleged sources of non-taxable income.[3] The jury, in accepting the government's proffered reconstruction of Ramsdell's income, agreed that an investigation of leads was not required. That jury finding will not be disturbed if supported by substantial evidence and not clearly erroneous.[4]

█ The record reveals no accounting by which the asserted non-taxable gifts could be substantiated. The death of the alleged donor precluded any verification from the source of the asserted gifts. The only method of confirmation of the gifts which appears to us at this point would be a search for customers of appellant's father. This would appear to be clearly beyond the guideline established in Holland of reasonable susceptibleness of being checked. Our review of the record reveals the failure of the government to investigate these leads to represent the more reasonable alternative.[5] The bank deposits method was proper for the purpose of reconstructing Ramsdell's income.

Additionally, it should be noted that even had the investigation proven fruitful in determining there had been cash gifts, appellant would still have had tax deficiencies for the years 1963 and 1965. Under the Holland guidelines, investigation need be made only when the leads, if true, would establish the taxpayer's innocence. We feel the combination of the absence of a means of effectively investigating, coupled with the lack of possible ultimate exoneration, afforded the government a quite justifiable basis for refusing to investigate Ramsdell's leads.

██ The appellant next argues the sufficiency of evidence to establish the element of willful intent to evade and defeat taxes owed. In all matters involving a sufficiency of evidence question, to support a conviction the rule is well established that the evidence must be viewed in the light most favorable to the prosecution.[6] The jury verdict must be upheld if there is sufficient direct and circumstantial evidence, together with reasonably drawn inferences, to support the verdict.[7] In this type of case, the conviction rests to a great extent, if not exclusively, on circumstantial evidence. The offense itself has its roots in concealment and nondisclosure. One guilty of this crime would hardly be expected to forego his prior secretive de-

---

3. United States v. Frank, *supra*, 151 F. Supp. at 872.

4. Cosby v. Shackelford, 408 F.2d 1144 (10th Cir. 1969) Baer Bros. Land & Cattle Co. v. Reed, 197 F.2d 569 (10th Cir. 1952).

5. *See* Boswell v. Chapel, 298 F.2d 502, 506 (10th Cir. 1961).

6. United States v. Ortiz, 445 F.2d 1100 (10th Cir. 1971); United States v. Gurule, 437 F.2d 239 (10th Cir. 1970); United States v. Keine, 424 F.2d 39 (10th Cir. 1970), cert. denied 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75; United States v. Mecham, 422 F.2d 838 (10th Cir. 1970).

7. United States v. Seasholtz, 435 F.2d 4 (10th Cir. 1970); United States v. Parrott, 434 F.2d 294 (10th Cir. 1970), cert. denied 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330; Havelock v. United States, 427 F.2d 987 (10th Cir. 1970), cert. denied 400 U.S. 946, 91 S.Ct. 252, 27 L.Ed.2d 251.

sign and confess his criminal intent. "The issue of criminal intent or guilty knowledge is usually a question of fact for the jury to determine * * * seldom susceptible of proof by direct evidence." United States v. Mecham, *supra*, 422 F.2d at 838.[8]

As stated previously, it is incumbent on the government to prove beyond a reasonable doubt there was a willful attempt to evade or defeat taxes. We have had occasion recently to discuss the proof requisite for a finding of willfulness in United States v. Dowell, *supra*, and United States v. Brown, *supra*. Judge Doyle stated in Dowell that "Such intent may be proved by circumstantial evidence, upon which reasonable inferences can be based." In Brown, in recognizing the virtual impossibility of proof of the crime by "affirmative or positive evidence," we confirmed that proof of the commission of the crime could be "based solely on circumstantial evidence" and the inferences derived from that evidence.

We dealt in Dowell with types of evidence from which a reasonable inference of willfulness could be elicited. In quoting Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), we stated that an inference of willfulness could be drawn from a consistent pattern of underreporting large amounts of income. We also feel the additional factor of the complete failure to maintain adequate records also belie appellant's asserted ignorance of additional tax owing.[9]

Reviewing the record, we find the inferences drawn by the jury in their determination of guilt to be in complete accord with both the evidence presented and our recent decisions in Dowell and Brown.

Affirmed.

8. *See also* Van Nattan v. United States, 357 F.2d 161 (10th Cir. 1966).

9. "When there are no books and records, willfulness may be inferred by the jury

from that fact coupled with proof of an understatement of income." Holland v. United States, *supra* at 128, 75 S.Ct. at 132.