JOSEPH PANZITTA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Panzitta v. Commissioner
Docket No. 21119-82.
United States Tax Court
T.C. Memo 1986-279; 1986 Tax Ct. Memo LEXIS 328; 51 T.C.M. (CCH) 1386; T.C.M. (RIA) 86279; July 7, 1986. Joseph Panzitta, pro se. Francis J. Strapp, Jr., for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated June 30, 1982, respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax for the years 1974, 1975, 1976, and 1977. In an amendment of his answer herein, respondent determined increased deficiencies *329 for 1974 and 1975. The tax deficiencies (reflecting the increased deficiencies for 1974 and 1975) and the additions to tax determined by respondent are reflected below. Additions to Tax
Years
Deficiencies
Sec. 6653(b) [1]
1974
$4,925
$2,462
1975
12,001
6,000
1976
10,858
5,429
1977
19,238
9,619
Respondent asserts that if the Court does not find petitioner liable for the additions to tax under section 6653(b), petitioner is liable for additions to tax under sections 6651(a)(1) and 6653(a). Following concessions, the primary issues for decision are: (1) Whether petitioner received unreported income during the years in issue, and if so, in what amounts; and (2) whether petitioner is liable for the additions to tax under section 6653(b) or, alternatively, for the additions to tax under sections 6651(a)(1) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petition *330 was filed herein, petitioner was a resident of Trenton, New Jersey. During each of the years 1974 through 1977, petitioner owned and operated, as a sole proprietor, a public accounting firm. Income was earned primarily from the preparation of individual income tax returns. The business operated under the name of Joseph Panzitta and Associates. The principal place of business was in Trenton, New Jersey. Petitioner's education and his experience in the preparation of tax returns are extensive. He graduated from college and law school, and he has completed a number of professional education courses pertaining to Federal income taxes. He has been employed by a number of law firms (as a law clerk) and accounting firms. His employment experience for over 20 years has concentrated on the preparation of income tax returns, tax accounting, and bookkeeping. During the years 1964 through 1967 and 1969 through the present time, petitioner has been enrolled to practice before the Internal Revenue Service. Although the record indicates that petitioner has rendered legal services for a number of his clients, after obtaining his law degree, petitioner never was licensed to practice law. *331 On May 22, 1967, petitioner pled guilty to two counts of aiding and assisting in the preparation of false and fraudulent income tax returns in violation of section 7206(2), and he was suspended from practice before the Internal Revenue Service for a two-year period commencing August 17, 1967. Petitioner's accounting firm had as many as 1,600 clients during the years in issue. The firm, however, was only marginally successful and did not make petitioner a wealthy individual. Over the course of the years in issue, petitioner and his wife, Nancy Panzitta, maintained a total of 14 separate bank accounts with eight different banks. Five of those bank accounts were maintained in the name of Joseph Panzitta and Associates. Three were in the name of Joseph and Nancy Panzitta. Two were in the name of Joseph Panzitta. One was in the name of Nancy Panzitta. One was in the name of Elaina Corporation, and one was in the name of Management Personnel, Inc. [2]
The land and office building out of which petitioner's accounting business was operated were owned by Elaina Corporation, which was *332 wholly owned by petitioner. Petitioner leased office space in the building owned by Elaina Corporation for his accounting business under a written lease agreement. Rental payments due Elaina Corporation under the lease were made by petitioner by checks written on one of the bank accounts in the name of Joseph Panzitta and Associates and also by endorsing checks received by petitioner from his accounting clients and depositing the checks directly into a bank account owned by Elaina Corporation. Prior to 1977, the individuals who assisted petitioner in his accounting business were employed by petitioner doing business under the name of Joseph Panzitta and Associates. On January 11, 1977, petitioner formed a new corporation called Management Personnel, Inc., to act as employer of the individuals (including petitioner) who worked as tax return preparers and as accountants for Joseph Panzitta and Associates. Management Personnel was wholly owned by petitioner. Similar to the method of making rental payments to Elaina Corporation, payments due Management Personnel under the employment agreement between petitioner and Management Personnel were made by checks written on one of the bank *333 accounts in the name of Joseph Panzitta and Associates and also by petitioner's endorsement of checks received by petitioner from his accounting clients and depositing the checks directly into a bank account owned by Management Personnel. On petitioner's and his wife's joint Federal income tax return for 1973 (a year not in issue before us), petitioner reported gross receipts from his accounting business of $42,323, deductions of $31,083 and a net profit of $11,240. That return was filed on July 2, 1975. Petitioner did not file his Federal income tax returns for the years in issue (1974 through 1977) when due in April of each of the succeeding years.On August 16, 1976, petitioner filed documents (Forms 1040) that petitioner now claims constituted valid Federal income tax returns for himself for 1974 and 1975. At the top of the first page of each of the Forms 1040 for 1974 and 1975 petitioner typed the words "Tentative Return -- Amended Return to Follow." Nominal income from miscellaneous sources was reported thereon but no income from petitioner's accounting business was reported on those 1040's for 1974 and 1975, nor were any expenses relating thereto reflected thereon. Neither *334 of the documents contained a Schedule C (Profit or (Loss) From Business or Profession). Petitioner also did not file timely Federal income tax returns for 1976 or 1977, and in February of 1978 respondent initiated a criminal tax investigation of petitioner. On August 11, 1978, petitioner filed Forms 1040 for himself for 1975, 1976, and 1977, on which the words, "Object: Self-Incrimination," were typed on each of the lines calling for financial information. Respondent's criminal investigation of petitioner was terminated sometime prior to 1983 and in August of 1983, petitioner filed "amended" tax returns with respect to his Federal income tax liabilities for 1975, 1976, and 1977. On November 10, 1983, petitioner filed an "amended" tax return with respect to his Federal income tax liability for 1974. Set forth below is a comparison of the adjusted gross income from petitioner's accounting business and tax liabilities reflected on petitioner's "tentative" and his "amended" tax returns for each of the years 1974 through 1977, along with the amounts determined by respondent with respect thereto. ADJUSTED GROSS INCOME OF
PETITIONER'S ACCOUNTING BUSINESS
"Tentative"
"Amended"
Respondent's
Petitioner
Year
Returns
Returns
Determinations
Now Concedes
1974
$9,403
$16,076
$10,186
1975
11,073
33,623
29,968
1976
16,295
29,718
28,273
1977
21,130
45,025
29,491
*335 PETITIONER'S FEDERAL INCOME
TAX LIABILITIES
"Tentative"
"Amended"
Respondent's
Year
Returns
Returns
Determinations
1974
$1,004
$4,925
1975
1,324
12,001
1976
2,406
10,858
1977
2,524
19,238
Throughout the course of respondent's examination of petitioner's Federal income tax liabilities, petitioner took the Fifth Amendment, could not locate records, and actively resisted respondent's efforts to obtain records from third parties. Respondent (through a canvass of local banks) eventually identified what is believed to be all of petitioner's bank accounts and obtained (via summons enforcement proceedings) copies of the relevant bank records. A bank deposits analysis was made by respondent of the records pertaining to petitioner's banking transactions. In the stipulation of facts and during the trial herein, petitioner conceded that many of the funds deposited into the various bank accounts constituted taxable income from his accounting business. Copies of many of the deposit slips specifically identified the makers of the checks as clients of petitioner's business. Many of the checks that were identified as being written by *336 his clients were deposited into bank accounts owned by Joseph Panzitta and Associates. Many of those checks, however, were deposited into petitioner's and his wife's personal bank accounts, or into bank accounts of petitioner's controlled corporations. Petitioner stipulated that he did not receive any inheritances, legacies, or devises during the years 1974 through 1977, that he did not receive gifts in excess of $500 during any of those years, and that he did not have more than $1,000 cash on hand at the beginning and end of each of those years. For 1975, 1976, and 1977, on behalf of Joseph Panzitta and Associates, and for 1977 on behalf of Management Personnel, petitioner filed employment tax returns (Forms 941). The Forms 941 for Joseph Panzitta and Associates for the first three calendar quarters of 1975, for all calendar quarters of 1976, and for the first three calendar quarters of 1977, reflected zero taxable wages paid and zero employment tax liabilities arising from petitioner's accounting business. Similarly, the Forms 941 filed on behalf of Management Personnel for the first three calendar quarters of 1977 reflected zero taxable wages paid and zero employment taxes *337 due. For the fourth calendar quarter of 1977, the Form 941 filed on behalf of Joseph Panzitta and Associates reflected taxable wages paid of $5,962. OPINION Adjustments to Income
The use of the bank deposits method to reconstruct a taxpayer's income has long been sanctioned by this and other courts. See Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Hoefle v. Commissioner,114 F.2d 713 (6th Cir. 1940), affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,supra.
Under the bank deposits method, total bank deposits are computed for the years in question to determine annual gross income. Adjustments are made to total deposits to eliminate nonincome items, such as gifts, loans, redeposits, bank transfers, and amounts earned in earlier years. Finally, credit is given for ascertainable deductible expenses and exemptions. Gleckman v. United States,80 F.2d 394 (8th Cir. 1935); *338 United States v. Frank,151 F. Supp. 866 (W.D. Pa. 1956). A likely taxable source for the deposits to the various bank accounts must be established (such as the fees received from petitioner's tax return preparation and accounting business). Holland v. United States,348 U.S. 121, 138 (1954). Where a taxpayer has not maintained adequate books and records and the Commissioner has determined that deposits to the taxpayer's bank accounts are derived from the taxpayer's income, a presumption of correctness attaches to such determination and the taxpayer has the burden of establishing that respondent's determination in erroneous. Harper v. Commissioner,54 T.C. 1121, 1129 (1970); Estate of Mason v. Commissioner,supra at 657; Rule 142(a). Respondent is not bound to accept a taxpayer's return or his books at face value. Harper v. Commissioner,supra at 1129. Respondent's special agents conducted an analysis of deposits made to each of the 14 bank accounts under petitioner's control. Petitioner concedes that most of the deposits constitute deposits of fees received from clients for accounting *339 or tax return preparation services, and petitioner objects herein only to a limited number of the adjustments made by respondent in his bank deposits analysis. Respondent, apparently, in his notices of deficiency and amendments to answer, already has treated as nontaxable deposits to petitioner's bank accounts the following items: Year
Amount
Nature of Item
1974
$3,500
Loan from Dave Moon
1974
1,600
Refund from Cosnoski Realty
1975
3,000
Loan from Leo Harber
1976
4,000
Loan from Leo Harber
1976
2,418
Loan from Puritan
Life Insurance Co.
The only amount remaining in issue as to whether its source was a loan is a $2,611 amount petitioner claims to have borrowed from Hamilton Bank in 1974 and to have deposited into his bank accounts. Although petitioner introduced into evidence a promissory note evidencing a loan of $10,611 from Hamilton Bank to Elaina Corporation dated December 13, 1974, which was signed by petitioner, he has not introduced any evidence that he actually deposited the full amount of the loan proceeds into one of the related bank accounts. Respondent's computations treat $8,000 of the bank deposits made in 1974 as attributable *340 to that loan and therefore as nontaxable to petitioner. The relevant bank records for Elaina Corporation for 1974 reflect a deposit of $8,000 on December 16, 1974, which has been attributed to the loan in dispute. The only other deposits during the period of November 29 through December 31, 1974, to the bank account of Elaina Corporation are two unidentified deposits of $156 and $378 both on December 20, 1974. In the absence of any credible evidence that more than $8,000 of the loan proceeds in question actually were deposited to the bank accounts, we find that no further reduction to petitioner's taxable income (as derived from an analysis of petitioner's bank deposits) should be made with respect to alleged loan proceeds received from Hamilton Bank in 1974. Petitioner also argues that $9,536 of the deposits he made to the various bank accounts in question during the period 1974 through 1977 do not represent taxable income to him because they allegedly constituted deposits of money his wife had earned or had received as gifts. Petitioner's wife did not testify herein and there is no evidence that she was employed or received gifts during the years 1974 through 1976. For 1977, *341 the limited payroll records of Management Personnel indicate that petitioner's wife received $3,532 in net wages from Management Personnel in that year. Respondent's bank deposits analysis already has identified $2,711 of the deposits into one of the Management Personnel bank accounts in 1977 as constituting a portion of petitioner's wife's wages and therefore as nontaxable to petitioner. The balance of $821 that petitioner's wife apparently earned in 1977 from Management Personnel clearly could have been available for deposit in 1977 into one of the bank accounts used in respondent's bank deposits analysis and would not properly be taxable to petitioner. We conclude that an additional $821 of the unidentified deposits made in 1977 into petitioner's bank accounts should be treated as nontaxable to petitioner. One last dispute between the parties [3] relating to respondent's bank deposits analysis pertains to $9,730 in cash that was deposited in 1977 into the bank account of Management Personnel. Petitioner has not offered any explanation as to the source of those cash deposits. He contends generally that all amounts deposited into the bank account of Management Personnel in 1977, *342 if not otherwise identified and to the extent chargeable to him as taxable income under respondent's bank deposits analysis, also should be treated as offsetting, deductible expenses of his accounting business. Petitioner argues simply that all unexplained amounts deposited into the bank account of Management Personnel were used by Management Personnel to pay various expenses of Management Personnel (the business of which related solely to its business relationship with petitioner's accounting business). Thus, petitioner argues that to the extent such deposits into the bank account of Management Personnel give rise to additional income to him, they also should give rise to a deductible "subcontracting expense" of his accounting business. On the record before us we cannot conclude that all of the funds available to Management Personnel were expended for the benefit of petitioner's accounting business, and we reject petitioner's contention that he is entitled to an additional business expense deduction of $9,730 to offset that same amount of unidentified cash deposits into the bank account of Management Personnel in 1977. *343 Petitioner has not offered any objection, explanation, or argument with respect to any remaining unagreed bank deposits that have not been specifically discussed herein and that have not been conceded by either petitioner or respondent. He has stipulated with respect to those amounts either that he "does not know the source of the deposits" or that he "has no documentation" with respect thereto. We find that the remainder of the unidentified and unagreed bank deposits (not otherwise conceded by respondent) constitute income properly taxable to petitioner. Additions to Tax under Section 6653(b)
The next issue for decision is whether the additions to tax under section 6653(b) that have been determined by respondent should be sustained. Section 6653(b) provides an addition to tax of 50 percent of the underpayment of tax if any part of the underpayment was due to fraud. Respondent bears the burden of proving by clear and convincing evidence for each year in issue (1) that there was an underpayment of tax and (2) that some portion of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). Fraud need not be established as to the entire amount of the underpayment; *344 rather, if any part of the underpayment was due to fraud, the section 6653(b) addition to tax attaches to the entire deficiency. Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Shaw v. Commissioner,27 T.C. 561, 570 (1956), affd. 252 F.2d 681 (6th Cir. 1958). The existence of fraud is a question of fact. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). In order to establish fraud, respondent must show that the taxpayer had the specific intent to evade a tax believed to be owed. Wilson v. Commissioner,76 T.C. 623, 633 (1981). Direct evidence of intention rarely is available and is not necessary. Fraud is never to be imputed or presumed, however, "its proof may depend to some extent upon circumstantial evidence and may rest upon reasonable inferences properly drawn from the evidence of record." Stone v. Commissioner,56 T.C. 213, 224 (1971). The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962); *345 Shahadi v. Commissioner,266 F.2d 495, 501 (3d Cir. 1959), affg. 29 T.C. 1157 (1958). Any conduct, the likely effect of which would be to mislead or conceal, is indicative of fraud. Spies v. United States,317 U.S. 492, 499 (1943). The failure to keep adequate books and records is indicative of an attempt to defraud. Agnellino v. Commissioner,302 F.2d 797, 801 (3d Cir. 1962); Papineau v. Commissioner,28 T.C. 54, 58 (1957). In the context of a reconstruction of a taxpayer's income using the bank deposits method (as in the instant case), respondent must introduce evidence that the bank deposits came from currently taxable income. That obligation may be met by establishing a likely taxable source of the bank deposits or by negating all nontaxable sources. United States v. Massei,355 U.S. 595 (1958); Holland v. United States,348 U.S. 121 (1954). Petitioner acknowledges that although he may have been negligent or even grossly negligent in the maintenance of his books and records, at no time did he have the intent to defraud. For the following reasons, we disagree. *346 Respondent has established and petitioner admits that fees from petitioner's accounting business provided the source for substantial amounts of the bank deposits that respondent has treated as taxable income. Petitioner consistently has failed to report substantial amounts of his income in each of the years involved herein. On his "tentative" tax return for 1974, petitioner reported adjusted gross income of only $661 and a tax liability of zero. On his "amended" 1974 tax return, which was not filed until November of 1983, petitioner reported adjusted gross income of $9,403 and a tax liability of $1,004. Petitioner now has stipulated herein that he had at least $10,186 in adjusted gross income for 1974, and we have found that petitioner had approximately $16,076 in adjusted gross income in 1974. On his "tentative" tax return for 1975, petitioner reported adjusted gross income of only $1,201 and a tax liability of zero. On his "amended" tax return for 1975, petitioner reflected adjusted gross income of $11,073 and a tax liability of $1,324. Petitioner now has stipulated herein that he had at least $29,968 in adjusted gross income in 1975, and we have found that he had approximately *347 $33,623 in adjusted gross income in that year. Other than the "Fifth Amendment" returns, petitioner did not file on his behalf any Federal income tax returns with respect to 1976 and 1977, prior to the "amended" tax returns with respect thereto filed in August of 1983. Those tax returns indicate adjusted gross income of $16,295 and a tax liability of $2,406 for 1976 and adjusted gross income of 21,130 and a tax liability of $2,524 for 1977. As part of the trial herein, petitioner has stipulated to adjusted gross income of at least $28,273 in 1976 and $29,491 in 1977, and we have found that petitioner had adjusted gross income of approximately $29,718 in 1976 and approximately $44,204 in 1977. Petitioner's primary explanation for his failure to file timely returns for 1974, 1975, 1976, and 1977 and for the understatements of income and tax liabilities on his "tentative" tax returns for 1974 and 1975, is that his records were misplaced due to the move of his office in early 1974. To explain his lack of cooperation in connection with respondent's audit and his interference with respondent's efforts to obtain records relating to petitioner's business from third parties, petitioner *348 argues that he was merely asserting his Fifth Amendment rights against self-incrimination and his legal right to object to an Internal Revenue summons. When all of the facts and evidence submitted in this case are viewed together (although quite confusing and inadequately explained in post-trial briefs filed by the parties), petitioner's arguments are not credible. Petitioner consistently ignored his obligations under the Federal tax laws to prepare and file income tax returns that reflect his true income and tax liabilities. His "tentative" returns for 1974 and 1975 made no effort to estimate his income or tax liabilities. Petitioner claims all of the records pertaining to his business were misplaced prior to 1975 and yet in July of 1975, he filed his Federal income tax return for 1973 which included substantial income and expense figures with respect to his business for that year.It thus appears his business records were relocated as of July of 1975. Furthermore, any misplacement of records for 1974 and prior years would not affect his records for 1975, 1976, and 1977. At the trial of this case, many of petitioner's business records were introduced into evidence. No explanation *349 was given, however, as to when they were located. Furthermore, such records are poorly organized, incomplete, and not helpful in determining petitioner's correct income. Surely, petitioner's legal education and his employment experience as a tax return preparer and accountant gave him the understanding and knowledge necessary to maintain and to retain complete and accurate books and records as to the income and expenses of his business from which he would be able to determine his correct Federal income tax liabilities. His failure to do so has not adequately been explained and supports respondent's determinations herein. As we have indicated, petitioner's accounting business was not particularly successful. However, significant fee income was received each year from the business. Petitioner purchased real property and a new Cadillac in 1974 or 1975. In 1977 he formed a new corporation to employ the tax return preparers he was using in his accounting business. He established numerous bank accounts, and significant fee income from his business was deposited directly into bank accounts owned by related entities, rather than into the bank accounts relating directly to his accounting *350 business. On the facts before us, it cannot reasonably be doubted that petitioner knew his business was earning a significant amount of income on which a significant tax liability likely was due. Petitioner's string of questionable activities relating to his and to his related companies' tax liabilities is most incriminating. We have noted the filing of a series of untimely, incomplete, and inaccurate "returns," the inadequate books and records, the numerous bank accounts, and the failure to report significant amounts of fee income over a number of years. We also note petitioner's filing of "Fifth Amendment" returns, his conviction in 1967 for the preparation of false income tax returns, and the incorrect employment tax returns filed on behalf of his accounting business and on behalf of Management Personnel. [4]
We conclude that petitioner *351 failed to report significant amounts of income earned from his accounting business in the years 1974, 1975, 1976, and 1977, and that he intentionally and willfully sought thereby to avoid the payment of his correct Federal income tax liabilities for those years. Respondent's determinations of additions to tax under section 6653(b) for each of the years 1974, 1975, 1976, and 1977 are sustained. In light of our resolution of the above issues, other issues raised by the parties concerning the statutes of limitation and additions to tax under sections 6651(a)(1) and 6653(a) are moot. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record herein does not indicate the name in which the 14th account was maintained.↩
3. Numerous other aspects of respondent's bank deposits analysis originally were in issue in this case and unagreed to at the time of trial. It is, however, our understanding that all aspects of respondent's bank deposits analysis not discussed in this opinion were conceded by either petitioner or respondent at the trial or on brief. Such concessions of the parties are to be reflected in the Rule 155 computations that the parties will make after filing of this opinion.↩
4. The record is clear that Joseph Panzitta and Associates in 1975 and 1976 and Management Personnel in 1977 paid wages to employees during the calendar quarters. Except for the fourth quarters of 1975 and 1976, those two businesses filed employment tax returns reflecting zero taxable wages paid and zero employment tax liabilities due.↩